THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WELLINGTON FOSTER ANTHONY, Defendant-Appellant.

Fourth District   No. 12488

Opinion filed May 6, 1976.

Francis J. Davis, of Auler Law Offices, of Champaign, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Thomas L. Knight, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions entered upon jury verdicts, and the concurrent sentences imposed for kidnapping (3 to 9 years), intimidation (3 to 9 years), and armed violence (1 to 3 years). No sentence was imposed upon a conviction for battery. The jury returned verdicts of not guilty upon charges of attempted murder, aggravated kidnapping and aggravated battery.

There is no issue of the identity of the defendant, or that he participated in the series of events continuing through approximately 3 hours. There is a conflict of testimony as to the quality and nature of the actions of the parties. The prosecuting witness, aged 19, testified to returning to her university campus on June 29, 1973, to attend a concert in the evening and to visit friends. Shortly before 11 p.m. she was walking from her lodging to the residence of a friend and a car stopped in the street and a man, later identified as defendant, asked direction to an address unknown to the witness. He drove on when another car stopped behind his car as it stood in the street. The witness walked on and shortly came to the same car

stopped at the curb. Defendant stepped up to her with a gun and required her to get into the car. They drove around over some time and ultimately came to a frame building, subsequently identified by the prosecuting witness. In summary, she was taken to a room in a second floor apartment, partially blindfolded and gagged, and her hands were successively tied with rope and taped behind her. Her blouse and brassiere were cut away with scissors. For a period of time she was tied to brackets in the wall during which time defendant alternatively caressed her stomach and struck her severe blows to the stomach. She was then placed on the bed while her hands and feet were tied and she was gagged and blindfolded. Defendant sat astride the witness first placing a pillow over her face and pressing down on it, and later he placed gauze over her neck and drew it very tight to prevent her breathing. During this episode the bed broke or came down on one side. Defendant thereafter draped the blouse over the witness, took her downstairs blindfolded and with her hands tied and drove to a place where she was left under a tree. The witness freed herself and walked to the apartment of the friend who shortly called the police. There is testimony that as they were leaving, or while the witness was being taken away, defendant told her that he knew her name and where she lived and that he would "get her" if she reported the acts to the authorities.

A search pursuant to warrant produced a rope, tape and gauze, as well as a knife and scissors which were identified by the witness. She also identified her brassiere which was found in a wastebasket. In addition to such corroborating circumstantial evidence, the occupant of the downstairs apartment testified to hearing sounds of a struggle and a girl's voice in pain for over a period of 40 minutes. A witness also observed a girl blindfolded and with her hands tied being taken from the building.

Defendant testified that he resided with his wife but that he rented the apartment described in evidence. He stated that he retained the use of one room which he kept locked, and rented the remainder of the apartment to individuals called the McSherry brothers. He stated that he used the room to store various items of athletic equipment used in officiating baseball and basketball games, and that the rope and pallet shown in photographs and in evidence were connected with his boating activities and were stored in the room.

Defendant explained the evening in terms that he had reported to work but that there was nothing which needed his immediate attention and he left to perform various errands, during the course of which he came upon the prosecuting witness who was hitchhiking, or asked for a ride. He related that she entered the car and that they talked of various things and finally determined to go to his room for a "rap session." In the ensuing

petting and caressing on the bed she agreed to remove her slacks, blouse and brassiere. Defendant testified it appeared that she was willing to have sexual intercourse until she discovered that defendant was married, whereupon she refused to respond to his attentions. He testified that as she resisted he became concerned that she would scream so he put a pillow over her mouth and later inserted cheesecloth and secured it "with athletic tape." He then taped her hands and tied her ankles so that she could not kick him. He stated that he cut the blouse and brassiere with a fishing knife in an effort to put them on while the hands were tied and that the prosecuting witness was blindfolded while he was taking her down the steps of the apartment and from the house to the car.

Defendant urges error in admitting Exhibit No. 64 into evidence during the cross-examination of defendant and permitting its use in the impeachment of defendant's testimony. It is not argued that the document was illegally seized. It is argued that the exhibit, called the "list," was not disclosed in the discovery ordered in compliance with Supreme Court Rule 412.

The "list" was procured during the execution of a search warrant in the room of defendant described in evidence. The inventory returned upon the warrant noted seizure of a garbage can and its contents of tape and torn papers, a garbage bag filled with papers, tape, gauze and a woman's "bra" and a bag of waste paper.

Defendant admitted writing the "list" of things to be purchased or procured by him. It included reference to a gun, knife, "tapes for eyes," "cloth for mouth—moist," plastic gloves, tape and "tape around the breasts." Defendant urges that such items of impeachment were devastating to the theory of the defense, and that he was taken utterly by surprise. Objections were made, together with a motion to suppress and to strike the testimony.

We understand the substance of the argument to be that Rule 412 requires the prosecution to isolate or specify the particular pieces of paper from the other items seized in the garbage containers.

Defendant urges that the "list" should have been so set out under Supreme Court Rule 412(a)(ii), which provides for disclosure of:

> "(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements; * * *."

No authority is cited which holds that this portion of the Rule is applicable to the "list." The quote in the Committee Comments states that such portion of the Rule is framed in the requirements of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1601, to avoid confusion

as to what constitutes a confession, and to further make available statements of codefendants. The "list" clearly is not a product of custodial interrogation or a statement made to police authorities.

Defendant further urges that the "list" should have been pointed out under Rule 412(a)(v), which provides for discovery of:

"(v) any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused;
* * *."

■■ The reply brief and the prosecution's motion to strike portion of such brief include arguments over the quantum of discovery provided. The record does not disclose the details discussed, and we cannot consider such arguments in determining the merits of the issue.

■■ By its language structure in the disjunctive, such Rule states a dichotomy, or provides two categories distinguishing documentary or tangible items intended to be used at trial from those items obtained from or belonging to the defendant. In the first concept, documentary items or tangible objects intended to be used at trial would not be within the knowledge of the defendant but obtained from sources other than the defendant. As to such an item, intent to use at trial is a key to its discoverability. The ABA Standards[1] states that the purpose of such discovery is "to inform the opposing party of evidence to be produced at trial so that he can most effectively test its validity."

In this aspect the "list" was admittedly prepared by defendant and in his handwriting, and thus the criteria of ability to ascertain the validity of the evidence is not a question. In this context there is no surprise to defendant where there is no issue or question that he had, in fact, prepared the document.

In the second aspect, it is the purport of the Rule that documentary items or tangible items obtained from the belongings of the defendant are discoverable, and the intent to use such evidence at trial is not a necessary factor. The ABA Standards[2] affirmed the existence of a second category of discoverable evidence in the language:

"Required disclosure of items taken from the accused or over which he may have a proprietary interest (whether or not the prosecution intends to introduce them into evidence) will facilitate decisions as to the legality of their seizure and their use as leads."

The return and inventory of items seized under the search warrant was filed pursuant to section 108—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 108—10), and was available to

---

[1] Standards Relating to Discovery and Procedure Before Trial §2.1a, Commentary, at 56 (1970).

[2] Standards Relating to Discovery and Procedure Before Trial §2.1b, Commentary, at 68 (1970).

defendant for inspection. As noted, defendant did inspect the return and inventory incident to his motion to suppress. The inventory specifically refers to papers and to torn papers contained in various containers seized in defendant's room in the apartment. So far as could be ascertained from the record the procedure for inspection to be followed was that the physical evidence could be examined upon request and at the office of the State's Attorney. The record shows that the defendant did present a motion to suppress a number of items seized pursuant to the search warrant. No reference was made as to garbage containers or contents.

Supreme Court Rule 412 sets forth the manner of implementing the Rule. In subsection (e), the Rule provides:

> "The State may perform these obligations in any manner mutually agreeable to itself and defense counsel or by:
>
> (i) notifying defense counsel that material and information, *described in general terms*, may be inspected, obtained, tested, copied or photographed, during reasonable times; and
>
> (ii) making available to the defense counsel at the time specified such material and information * * *." (Emphasis supplied.)

The Committee Comments to such portion includes the language:

> "It delimits the extent of its responsibility to notifying defense counsel, only in general terms, as to the existence and the availability of the material and information. The State need not send copy to defense counsel and it need not point out the significance of various items."

■■ We conclude that upon this record defendant's contention that the State had the duty to point out the significance of the document or information as the "list" is without merit. In the light of the background and criteria of the Rule, it is unnecessary to further examine defendant's argument as to whether or not the State's Attorney should have anticipated the use of the document at trial for purposes of impeachment.

Defendant urges that it was error to deny a motion for mistrial made during the testimony of an arresting officer, Wicks. The record shows that defendant's wife was with him at the time of the arrest and that she accompanied him to the police station. The officer testified that as he read each of the separate *Miranda* admonitions to defendant, he asked, "Do you understand that right?" The prosecution asked whether the defendant responded to each such question. The officer stated that defendant nodded to each question, and he was then asked, "An affirmative nod?" The officer responded, "Yes. Then at the end he made the statement that 'I have nothing to say at this time'."

Defendant contends that such testimony comes within the rule of *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, which holds that neither the court nor the prosecution may comment upon an

assertion of the defendant's right to remain silent. Although defendant argues the point, it is apparent that the prosecution was not seeking to elicit such response. It is not contended that the prosecution thereafter commented upon the statement of Wicks either in the evidence or the argument. The statement by the witness was an unelicited and unresponsive statement and there was no comment by the prosecution. (*People v. Brady*, 14 Ill. App. 3d 830, 303 N.E.2d 528.) It was, in fact, an isolated statement in a trial extending over several days and nothing in the record suggests an intent by the prosecution to imply or prove guilt to such a statement. *People v. Rooney*, 16 Ill. App. 3d 901, 307 N.E.2d 216, *cert. denied*, 419 U.S. 1025, 42 L. Ed. 2d 300, 95 S. Ct. 503.

■■ Again, the identity of the defendant was not an issue at the trial, his association with the prosecuting witness was not denied, and the defendant did, in fact, testify as to his version of the events. Such factors distinguish defendant's cited cases upon the issue. (*People v. Lewerenz*, 24 Ill. 2d 295, 181 N.E.2d 99; *People v. McVet*, 7 Ill. App. 3d 381, 287 N.E.2d 479; *People v. McDowell*, 4 Ill. App. 3d 382, 280 N.E.2d 471; *People v. Garnes*, 12 Ill. App. 3d 210, 298 N.E.2d 399, and *People v. Hughes*, 11 Ill. App. 3d 224, 296 N.E.2d 643.) In the light of the facts of record we conclude that any arguable error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

Defendant also urges that the court erred in denying a motion to suppress defendant's statements said to have been made while in custody. He asserts under the rule of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the statement of defendant just discussed invoked the right to remain silent, and that thereafter any statement he made to officers must be assumed to be the product of compulsion. The record discloses that following the *Miranda* warnings, defendant was permitted an interview alone with his wife in the coffee room of the police station. The officer, Wright, testified that he responded to a knock on the door and defendant invited him to enter.

At this point defendant objected, and outside of the presence of the jury made an offer of proof that defendant had been asked questions during a booking procedure. The court denied the offer of proof at that time stating that there was no evidence that the officer had asked any questions. In the context of the record, the offer of proof related to a different time and place than that to which Officer Wright was testifying.

Wright testified that upon responding to the knock and entering, defendant gave him the names of two individuals, in essence, indicating that these persons could say that he was at work on the night in question from the evening until the following morning. The officer did ask whether he left his place of work and defendant said that he left twice. There was

a further question concerning whether defendant appeared in a group photograph found during the search of the apartment and defendant admitted that he had such apartment.

■■ In *Michigan v. Mosley*, ___ U.S. ___, ___, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326, the United States Supreme Court stated that no "passage in the Miranda opinion can sensibly be read to create a *per se* proscription of indefinite duration upon any further question by any police officer on any subject * * *." In the context of such language, the court referred to the making of voluntary statements by the accused. The court stated that rather than a *per se* proscription the test to be applied was whether or not the police honored the right to cut off questioning. Here, the defendant clearly initiated and volunteered the conversation concerning the identity of the fellow employees who knew his whereabouts on that night.

■■ As to the question concerning the photograph, there is no issue of his identity, his tenancy or his presence in the apartment with the prosecuting witness. The defendant himself testified as to his leaving his place of employment on the evening in question. We find in the record no motion by defendant to strike the testimony, or to renew objections. It is apparent that if error was, in fact, present, it was harmless beyond a reasonable doubt within the precept of *Chapman v. California.*

■■ Defendant contends that the statute defining armed violence (Ill. Rev. Stat. 1973, ch. 38, art. 33A) is unconstitutional in that it permits the prosecution to exercise discretion in determining whether defendant should be prosecuted for a felony or a misdemeanor. The opinion in *People v. McCollough*, 57 Ill. 2d 440, 313 N.E.2d 462, has decided the issue contrary to the views of the defendant, and in *People v. Graham*, 25 Ill. App. 3d 853, 323 N.E.2d 441, it was specifically held that this statute was constitutional as against this argument.

■■ We find no merit in the contention that the court erred in permitting Dr. Micherling to testify as to his observations upon examination of the prosecuting witness at a hospital. While the witness was educated as a dentist, he testified to his study and work as an oral surgeon, and that in such capacity he regularly gave physical examinations at the hospital. We find no abuse of discretion by the trial court in permitting the witness to testify. *Hardware State Bank v. Cotner*, 55 Ill. 2d 240, 302 N.E.2d 257.

■■ Defendant argues that there was a failure to prove him guilty beyond a reasonable doubt. The fact that his testimony contradicts that of the prosecuting witness is not sufficient to raise a reasonable doubt for the reason that the issue of credibility is a matter for the triers of fact who had the opportunity to observe the several witnesses and to consider the inconsistencies to exist in the testimony of the prosecuting witness. There is substantial corroboration of her testimony in the testimony of other

witnesses and by the physical evidence consistent with her testimony. It is clear that the evidence sustains the verdict of the jury.

■■ We find no abuse of discretion in denying probation, or in the sentence imposed. While there were witnesses who testified in mitigation to defendant's reputation for good character and conduct, the record supports the trial court's conclusion that the crime was a vicious one and the product of some planning. The trial judge noted that a psychiatrist had concluded that if the facts in evidence were true, defendant was a potentially dangerous person. The record shows that the trial court carefully considered the record in the exercise of his discretion, both as to probation and the duration of the sentence imposed. We find that those cases cited by defendant upon the issue of abuse of discretion did not include acts of violence inflicted upon a victim.

■■ In the execution of the search warrant certain items were taken which were not named in the complaint for such warrant. It is urged that it was error to deny a motion to suppress such items under the rule of *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022. That opinion states that if the presence of an object is known to the police and it is intended to seize such, the object must be described in the warrant. It has been held that items of evidentiary value must be seized pursuant to a legal search (*Warden v. Hayden*, 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642), even though they are not stolen or contraband. Defendant's argument that the several items seized were known to the police to be in the apartment when the warrant was issued is not convincing. A wooden pallet, apparently by reason of the witness' vocabulary, had been described to them by the prosecuting witness as a box or crate. We note that the defendant testified that he had made such pallet and that he used the apartment for doing work of that nature. A photograph of the apartment showing such pallet was introduced into evidence without objection. A woman's bra was seized. It is admitted by defendant that the victim was blindfolded when she was taken out of the apartment and could only guess as to whether or not it remained there. Her statement to the police as to its whereabouts was, in fact, a question. Defendant objects to the seizure of a knife in a sheath. The police had been advised that the prosecuting witness had seen defendant with a sheath knife on his belt. As she was blindfolded when she was taken away she could not say that it remained in the apartment. The assorted brackets and hooks were shown in the photograph of the room which was admitted without objection. A suit of clothing seized from the apartment was of no particular relevance as the identity of the defendant, or his presence at the scene, was not an issue. Upon such record we find no reversible error in the denial of a motion to suppress.

■■■ Certain issues have not been raised upon appeal but may be

considered as plain error under Supreme Court Rule 615. As charged, the offense of battery is a misdemeanor but no sentence was imposed upon such conviction. The conviction of armed violence rests upon a charge of committing a battery while armed with a deadly weapon. The record indicates that such offenses were incident to and motivated in effectuating the kidnapping. Such convictions must be reversed upon the authority of *People v. Stewart*, 45 Ill. 2d 310, 259 N.E.2d 24, and *People v. Lerch*, 52 Ill. 2d 78, 284 N.E.2d 293. The offense of intimidation occurred, however, as the defendant was removing the prosecuting witness from the apartment. His objective changed as he sought to prevent a complaint by her to the police, and his conduct was directed to achieving such different purpose by threats. (*People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819.) The acts constituting intimidation were thus clearly independently motivated and divisible. *People v. Moore*, 51 Ill. 2d 79, 281 N.E.2d 294; *People ex rel. Evans v. Twomey*, 52 Ill. 2d 299, 287 N.E.2d 661, and *People v. Watson*, 31 Ill. App. 3d 774, 335 N.E.2d 20.

The convictions and sentences for kidnapping and intimidation are affirmed, the convictions for armed violence and battery are reversed, and the cause is remanded with directions to issue an amended mittimus.

Affirmed in part, reversed in part and remanded with directions.

CRAVEN and SIMKINS, JJ., concur.