THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RANDY GROSS, Defendant-Appellant.

Fourth District   No. 13875

Opinion filed September 26, 1977.

Francis J. Davis, of Auler Law Offices, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant appeals a jury verdict convicting him of one count of aggravated battery, four counts of armed violence and five counts of reckless conduct. The numerous issues raised on appeal necessitate a thorough recitation of the facts.

Defendant Randy Gross, a 20-year-old janitor, finished work on May 17, 1975, about 3:30 p.m. After a stop at home, he went first to his mother's house, where he consumed three beers, and then went to Tony Hutchison's house, where he also drank. James Algee and defendant went to Algee's mother's house about 6 p.m. There, defendant consumed more

hard liquor. Defendant Gross went to Algee's house around 9 or 9:15 p.m. At Algee's house, defendant drank tequila and wine. At 10 p.m., defendant drove Algee to a liquor store. Algee did not notice anything unusual or erratic about defendant's driving.

During a drinking contest, defendant tried to get Earl Gray to join in, and an argument started between them. Later there was another disturbance during which defendant pushed Algee. Algee responded by hitting defendant in the mouth or jaw. Defendant fell, bleeding and unconscious, and was carried to the kitchen. After being in the kitchen a couple of minutes, defendant opened his eyes and ran out the door.

A short time later, defendant's wife called James Algee's house and said that her husband was coming over with a shotgun. Algee went outside and saw defendant drive up. Defendant got out of the car and started shooting. When he heard shots, Hutchison went to the door. He told the defendant to put the gun down; defendant told him to get back and then fired a shot, hitting Hutchison in the hand. At the time the shooting started, James Algee was outside the house while Tony Hutchison, Vicki Hutchison, Carla Gray, Earl Gray, Germain Gray, and Barnett Algee were inside. The shooting lasted three or four minutes and then defendant drove off.

A deputy sheriff found defendant unconscious in his own home. Defendant was covered with blood and was sitting in a large chair, a loaded gun across his lap. A 12-gauge shotgun was recovered from the trunk of defendant's car. Defendant was taken to a hospital where he told the deputy that he was forced by Tony Hutchison to drive to a home and when he got out of the car, someone from the house ran out and shot him in the right arm after which defendant crawled to his trunk, removed his shotgun and fired one shot at the house. He further told the officer that somebody from the house ran out and hit him with a sledge hammer. Defendant stated the next thing he recalled was waking up in the hospital.

Defendant testified in his own behalf that he began to feel the effects of the liquor at Tony Hutchison's house and remembers nothing after that except sitting at Algee's house. When defendant awoke the next day, he testified he had a hangover and was physically ill two or three times. A psychiatrist testified that, at the time of the incident, defendant suffered from acute alcohol intoxication and an acute brain syndrome caused by the concussion and that defendant, in his opinion, was incapable of acting knowingly and intentionally. A second psychiatrist testified that defendant had the ability to form the intent to engage in the alleged activities and that his behavior was not automatic. After the jury verdict, defendant was sentenced to concurrent terms of 1 to 3 years for the aggravated battery conviction and the four convictions for armed violence, and 364 days for the five counts of reckless conduct. All sentences were to be served concurrently.

Section 12—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)) provides that a person commits an aggravated assault when, in committing an assault, he uses a deadly weapon. Section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 33A-2) provides that a person commits armed violence when, while armed with a dangerous weapon, he performs any act prohibited by, *inter alia*, section 12—2. Defendant here was convicted of four counts of armed violence in that he performed an act prohibited by section 12—2, namely an aggravated assault. Defendant contends that he was denied due process because an identical element, a dangerous weapon, was used to charge a more serious offense, *i.e.*, armed violence. Defendant, however, cites no authority for this position nor does he explain how he was denied due process.

■■■ In *People v. McCollough* (1974), 57 Ill. 2d 440, 313 N.E.2d, 462, *appeal dismissed* (1974), 419 U.S. 1042, 42 L. Ed. 2d 637, 95 S. Ct. 614, the Illinois Supreme Court held that where criminal conduct is prohibited by two different statutes, which provide for different penalties, there is no denial of equal protection or due process in the prosecution of defendant under the statute which provides for the greater penalty. In that case, the same conduct constituted the offenses of involuntary manslaughter and reckless homicide. *McCollough* controls. There is no due process violation. Other cases have specifically upheld the armed violence statute against equal protection challenge. *People v. Hollister* (1976), 39 Ill. App. 3d 514, 350 N.E.2d 373; *People v. Graham* (1975), 25 Ill. App. 3d 853, 323 N.E.2d 441; *People v. Anthony* (1976), 38 Ill. App. 3d 190, 347 N.E.2d 179.

■■ Defendant asserts that the armed violence statute is unconstitutionally vague because the possible sentence is not apparent from either the aggravated assault or armed violence statute. Defendant's contention is unmeritorious since the penalties to which defendant is subject are clearly set forth in the Unified Code of Corrections. Because of our earlier holdings herein, defendant's argument that he was denied a fair trial on the remaining charges due to the unconstitutionality of the armed violence statute and that, at least, resentencing should occur due to the same statute's unconstitutionality, need not be discussed.

Defendant asserts that the armed violence statute should be interpreted not to apply to aggravated assault where the aggravating element is the use of a deadly weapon. Prior to 1967, an assault committed while using a deadly weapon was a misdemeanor. (Ill. Rev. Stat. 1961, ch. 38, par. 12—2.) When the armed violence statute (Ill. Rev. Stat. 1975, ch. 38, par. 33A—2) was added to the Code in 1967, paragraph (a)(1) was deleted from section 12—2 of the aggravated assault provision. Subsequent to this amendment, an assault committed while using a deadly weapon against a person under circumstances outside section 12—2 could only be

prosecuted as a simple assault. By a later amendment to the Criminal Code effective August 3, 1967, the General Assembly reinserted paragraph (a)(1) into section 12—2. This, defendant says, shows the obvious legislative intent to make an assault committed under the circumstances within section 12—2(a)(2) through section 12—2(a)(10) an aggravated assault. Thus, defendant concludes that the scope of the armed violence statute must be found to cover only those violations of subparagraphs (a)(2) through (a)(10), and not section 12—2(a)(1).

■■ Defendant's argument was thoroughly considered by the appellate court, third district, in *Graham*. The court concluded that "the legislative intent obviously was that section 12—2(a)(1) when reinserted was intended to be subject to incorporation by reference in the armed-violence statute provisions, particularly when so quickly reinserted. There was an obvious intent that the penalty for any aggravated assault with a deadly weapon would be enhanced and possibly punished under the armed-violence provision." (25 Ill. App. 3d 853, 859, 323 N.E.2d 441, 445.) We approve and adopt the rationale of *Graham*.

■■ Defendant states that to prove him guilty of armed violence, it had to be proven that he placed the victim in reasonable apprehension of receiving bodily harm, that he used a dangerous weapon, and that he used a deadly weapon. Defendant asserts that because the evidence showed that only one gun was used, one of the elements was not proven. This argument has no merit. The armed violence statute is intended to include assaults committed with a deadly weapon. The State need not produce two guns.

■■ Defendant also argues that he was not convicted of aggravated battery beyond a reasonable doubt. He says that the evidence does not show that he acted intentionally or knowingly because, before hitting him with a shot, he stated to Tony Hutchison, "* * * I am not trying to hurt you * * *." While defendant's statement indicates that he may not have had the intent to bodily harm Hutchison, the evidence clearly shows that the defendant was aware that if he fired in the direction of the victim, there was a substantial probability that bodily harm would result. James Algee testified that after yelling at Hutchison, defendant fired four or five times in Hutchison's direction. Such evidence was sufficient for a jury to find defendant guilty of aggravated battery beyond a reasonable doubt.

Defendant alleges that his intoxication rendered him unable to form the requisite mental state of knowledge and, therefore, his aggravated battery and armed violence convictions should be reversed. Voluntary intoxication is a defense to a crime requiring knowledge or intent. (*People v. Moore* (1974), 23 Ill. App. 3d 212, 318 N.E.2d 676.) In order for voluntary intoxication to be a legal excuse, the condition of intoxication must be so extreme as to suspend all reason. (*People v. Hayes* (1976), 37

Ill. App. 3d 772, 347 N.E.2d 327.) The weight to be given the testimony relating to intoxication and inferences to be drawn therefrom are particularly within the province of the jury; verdicts will not be reversed unless palpably against the manifest weight of the evidence. *People v. Johnson* (1975), 32 Ill. App. 3d 36, 335 N.E.2d 144.

■■ There was sufficient evidence in this case for the jury to conclude that defendant acted knowingly. First, defendant told Hutchison to get out of the way before he started to shoot at the house. This evidence alone may be enough to sustain the verdicts. Second, after the shooting, defendant called Algee and told him he still planned to get him. Finally, the State's expert testified that defendant knew what he was doing at the time of the offense. From this evidence, the jury was entitled to conclude that defendant had the requisite mental state to perform the acts constituting the offenses.

Defendant asserts that the jury verdicts were legally inconsistent because the jury found that defendant acted knowingly in committing the aggravated battery and armed violence offenses, but acted recklessly in committing the reckless conduct offense. Defendant requests a new trial on the basis that a person cannot have two mental states at the same time. In *People v. Better* (1975), 33 Ill. App. 3d 58, 337 N.E.2d 272, defendant asserted that the obscenity complaints against him did not charge an offense because they alleged two states of mind which were mutually exclusive. The court found that the provisions were not mutually exclusive since there was adequate basis in the record to show that defendant had both the knowledge of the content of the dancing and consciously disregarded the risk that nude dancing would incite indecent acts. In *People v. Pearson* (1973), 16 Ill. App. 3d 543, 306 N.E.2d 539, the court held that verdicts finding defendant guilty of aggravated assault and not guilty of armed violence were legally inconsistent because the proof for both offenses was the same. Both of the above cases differ from the facts herein. In *Better*, the offense involved different mental states for the same offense. *Pearson* obviously differs in that verdicts based on the same evidence were opposite.

■■ Mental states of knowledge and recklessness are not susceptible to clear distinction. Knowledge in this case requires that defendant be aware that by firing in the direction of Tony Hutchison, there was a substantial probability that bodily harm would result and that by firing toward and into the house, defendant was putting the occupants in reasonable apprehension of receiving a battery. Reckless conduct, on the other hand, requires that defendant act with conscious disregard of a substantial unjustifiable risk. The evidence here could support separate verdicts for aggravated battery and the two other offenses. Defendant told Hutchison to get out of the way before he fired in the victim's

direction. This statement shows knowledge and would not be inconsistent with a finding of knowledge or recklessness as to other victims. The verdicts returned by the jury are legally consistent and the two states of mind involved are not mutually exclusive as in *Better*.

The State in its brief "concedes" that the defendant may not be convicted of more than one offense in the instant case in regard to each victim, but maintains that this court should affirm the most serious offense committed against each victim. At oral argument, however, the State abandons its concession and argues that all convictions and sentences should be affirmed, citing *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, a recent Illinois Supreme Court decision. In *King*, the court reviewed numerous Illinois cases involving the question of the propriety of multiple convictions and sentences arising out of the same transaction involving a defendant, such as the commission of a burglary incident to the commission of another crime after the illegal entry. The court rejected the "independent motivation" test and held "that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845.

■■■■ It is our opinion, however, that *King* does not control the disposition of the instant case. The convictions and sentences of this defendant for aggravated battery, armed violence and reckless conduct involved the commission of offenses requiring specific mental states and must be based on distinguishable variations in conduct, such as committing a theft incidental to burglarizing a building. It is clear that defendant's conviction and sentence for aggravated battery as to Tony Hutchison is proper and should be affirmed. It is equally clear that his conviction and sentence for armed violence as to the same victim is proper and should be affirmed for the reason that the evidence indicates defendant fired several shots at Hutchison other than the one which struck him. However, the jury has by its verdict attempted to assign different degrees of culpability as to each of the other shots fired into the house as each shot relates to the other occupants of the Algee home. There is evidence defendant fired perhaps 14 shots and that he fired four or five times at Tony Hutchison. It cannot be said that when defendant fired each of the other nine or 10 shots that his intended victims were Tony Hutchison, Carla Gray, Vicki Hutchison and Barnett Algee as to the charge of armed violence and at the same time that his intended victims were Tony Hutchison, Vicki Hutchison, Carla Gray, Germain Gray and Barnett Algee as to the charge of reckless conduct. His actions throughout the entire period after Tony Hutchison was shot indicate a single, continuous state of mind and conduct.

■■ It is impermissible, and therefore error, for the jury to assess a

different state of mind as to the defendant when he fired each of the shots that were not directed at Tony Hutchison. The balance of the shots were fired into the house occupied by Tony Hutchison, Carla Gray, Vicki Hutchison, Barnett Algee and Germain Gray. It is improper to hold that while armed with a dangerous weapon defendant committed an assault as to a specific occupant of the house and at the same time recklessly fired a shotgun at the same occupant when he fired each shot. The evidence discloses that with the exception of the shots directed at Tony Hutchison, the remaining shots were fired indiscriminately at the house with shots going in the kitchen and bedroom windows and the front door of the Algee house. The jury was justified in finding that the defendant used a dangerous weapon, that each of the occupants of the house was placed in reasonable apprehension of receiving bodily harm when each of the shots was fired at or into the house, and that in each case the defendant acted knowingly.

■■■ The jury returned a guilty verdict of aggravated battery, armed violence, and reckless conduct as to Tony Hutchison; armed violence and reckless conduct as to Vicki Hutchison, Barnett Algee and Carla Gray; and reckless conduct to Germain Gray. It is our opinion, however, that the decision in *King* does not control for the reason that the evidence indicates a series of acts evidencing a distinguishable, but single, state of mind. The evidence introduced which bears on proof of the mental state of defendant at the time of commission of the offenses charged renders it impossible for the jury to find a variation in mental state when the shots which were not directed at Tony Hutchison were fired. At the same time, there is ample evidence that defendant did knowingly shoot Tony Hutchison, causing him bodily harm; that he committed the offense of armed violence as to Tony Hutchison, Carla Gray, Vicki Hutchison and Barnett Algee; and that he committed the offense of reckless conduct as to Germain Gray. Although nothing appears in the record to indicate why the jury would consider defendant's conduct less culpable as to Germain Gray, they were justified in returning a verdict of guilty of reckless conduct as to her based on the evidence.

Accordingly, the convictions and sentences of the defendant for each of the following offenses is affirmed: aggravated battery as to Tony Hutchison; armed violence as to Tony Hutchison, Vicky Hutchison, Barnett Algee and Carla Gray; and reckless conduct as to Germain Gray. All other convictions and sentences were reversed. This cause is remanded for the issuance of a new mittimus.

Affirmed in part, reversed in part and remanded with directions.

CRAVEN, P. J., and REARDON, J., concur.