THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GERALD C. SCHMIDT, JR., Defendant-Appellant.

Fourth District   No. 4—86—0633

▮▮▮▮▮▮

Opinion filed September 24, 1987.

▮▮▮▮▮▮

GREEN, J., dissenting.

▮▮▮▮▮▮

Daniel D. Yuhas and Patricia G. Mysza, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in Adams County, Gerald C. Schmidt, Jr., defendant, was convicted of burglary and theft. Defendant appeals contending the verdicts for burglary and for theft were inconsistent. We agree and reverse.

The defendant was charged with burglary with intent to commit theft. The theft elements related to section 16—1(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)), which provides as follows:

"A person commits theft when he knowingly:
   (a) Obtains or exerts unauthorized control over property of the owner."

The elements of burglary, with the elements of theft as so described,

were instructed to the jury. A verdict of guilty of burglary was returned.

A neighbor to the Schuering residence testified she saw a young man enter the residence through a window on the back porch and later exit from the same window. She further testified that the same man was then apprehended by police on the back porch. The defendant testified that he went to the Schuering home looking for work, and while at the front door, he saw a man run towards the back of the house. Defendant maintained that he then went around to the back of the house, picked up various items which the fleeing man had dropped, and was then apprehended by the police. A police officer testified to apprehending the defendant on the back porch. Defendant requested Illinois Pattern Jury Instructions, Criminal, No. 13.07 (2d ed. 1981), which is the instruction as to theft as defined in section 16—1(d)(1) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(d)(1)), which provides:

"A person commits theft when he knowingly:

* * *

(d) obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property."

The issues instruction based on this provision was given together with verdict forms for theft under section 16—1(d)(1). A verdict of guilty was returned on the section 16—1(d)(1) theft.

We are not dealing with an included-offense issue. Section 2—9 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 2—9), provides in part:

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged * * * ."

Burglary requires a determination that "without authority [one] knowingly enters * * * with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1985, ch. 38, par. 19—1.) The burglary, as charged, requires proof of the intent to commit theft, but not the theft. Theft under section 16—1(d) does not require an entry, nor does it require the intent to commit the initial theft, but a theft must have been committed by someone else. Thus, the burglary charge does not include the theft element necessary for a conviction under section

16—1(d). Neither the State's charge in the present case nor the State's proof included the section 16—1(d) elements.

■■ The factual backgrounds of the defendants in *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, are similar to that of the present case. The *Dace* opinion results in some confusion. It recognizes the necessity, at times, of instructing as to a lesser-included offense, but it also states that theft is not a lesser-included offense of burglary. The opinion then discusses the "inherent relationship" doctrine which was enunciated in *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, but specifically reaffirms the prior election not to follow the doctrine. At this point, one would expect a decision holding it was not error to deny the theft instruction in the burglary cases. Such was not the case. The court said:

> "While we do not agree with the appellate court that there is an inherent relationship between the crimes of residential burglary and theft, we agree that on these records the circuit court should have given the tendered instructions. The information in each case charged residential burglary with intent to commit a theft. The proof of the offense charged requires proof of the specific intent (*People v. Toolate* (1984), 101 Ill. 2d 301), and the evidence adduced in each case would support a conviction of theft (*People v. Housby* (1981), 84 Ill. 2d 415). We hold that under these circumstances, where the information charged the specific intent to commit theft and the offense of theft was proved by the evidence, refusal to give defendant's tendered instructions was error." (*People v. Dace* (1984), 104 Ill. 2d 96, 102-03, 470 N.E.2d 993, 996.)

No further reason for requiring the instruction based on theft is given. Because of the absence of an included offense and the rejection of the "inherent relationship" doctrine, we come to the conclusion the justification for requiring the theft instruction is based on the case law holding an accused is entitled to instructions on his theory of the case, and a refusal to give such instruction is error. (*People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850; *People v. Dortch* (1974), 20 Ill. App. 3d 911, 314 N.E.2d 324; *People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726.) In the instant case, defendant's theory was that he did not enter the home, was not accountable (Ill. Rev. Stat. 1985, ch. 38, par. 5—2) for the entry and theft therein, and if guilty of anything, was guilty of theft under section 16—1(d). The "theory of the case" citations generally apply to defenses, not to separate criminal offenses. Defendant's theft by possession of stolen property theory is in the nature of a defense—a defense to burglary. So, arguably,

it can be a theory of defense even if resulting in a conviction of a separate crime.

While *Dace* lacks certain specificity, we believe that opinion required the trial court to give the defendant's instruction in the present case.

■ In turning to the determination of the issue of inconsistent verdicts, we recognize a conviction under section 16—1(d) requires finding that Schmidt "knowingly obtained control over stolen property." The property would have to have been stolen by another.

Under the State's theory of the case and the evidence presented by each side, it is impossible to sustain both a finding of an intent to commit a section 16—1(a) theft, which is alleged in the burglary charge, and also the section 16—1(d) conviction. The trier of the facts could not rationally find that there were multiple crimes. (See *People v. Spears* (1986), 112 Ill. 2d 396, 405, 493 N.E.2d 1030, 1034; *People v. Gross* (1977), 52 Ill. App. 3d 765, 367 N.E.2d 1028.) It would not be logical to find, under the evidence, that the defendant entered the house with the intent to commit a theft and also picked up stolen property dropped by another whom the defendant allegedly observed run through the house and crawl out the back window. These are inconsistent verdicts, and the cause must be remanded for a new trial on all counts. *People v. Spears* (1986), 112 Ill. 2d 396, 410, 493 N.E.2d 1030, 1035.

This case, as well as others like it, indicate the difficulty of allowing defense instructions relating to a legally separate offense, or offenses, not charged in the information or indictment. It does not take much imagination to understand the confusion faced by the members of the juries. Even lawyers and judges practicing in the field of criminal law have difficulty with the various issues and conflicts between statutory provisions. We must live with the law as determined by *Dace*, but recognize the necessity of closing argument, and possibly written instructions, pointing out to jurors that, as in the present case, the proposed verdicts are inconsistent.

For the above-stated reasons, the decision of the circuit court of Adams County is reversed and remanded.

Reversed and remanded.

SPITZ, P.J., concurs.

JUSTICE GREEN, dissenting:
I share the concern of the majority as to the confusion and uncer-

tainty that arises from the application of the precedent of *People v. Spears* (1986), 112 Ill. 2d 396, 493 N.E.2d 1030, and *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, to the facts of this case. Nevertheless, I do not deem those decisions to require us to grant a new trial on the question of guilt in this case. I dissent from the decision to do so. As the majority does not speak to the sentencing issue raised by defendant, I also refrain from addressing it.

Prior to its decision in *People v. Spears* (1986), 112 Ill. 2d 396, 493 N.E.2d 1030, the Illinois Supreme Court had followed a rule that inconsistency in verdicts of conviction in a criminal case required a new trial only if the verdicts were legally inconsistent but not if the inconsistency was only from the standpoint of logic. For instance, verdicts of guilt for murder, voluntary manslaughter and involuntary manslaughter against the same defendant arising from the same act were held to be legally inconsistent in *People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335, because the defendant could not have acted both knowingly and intentionally as required by the first two charges and, at the same time, recklessly as required by the latter charge. Similarly, verdicts of guilty of armed violence and not guilty of the predicate offense of murder were legally inconsistent in *People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233. On the other hand, verdicts of guilty of an offense and not guilty of another offense, though not logical under the evidence, were held not to be legally inconsistent in *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005, and *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.

Here, the verdicts finding the defendant guilty of burglary by entering a building with intent to commit a theft and also of the offense of theft by knowingly receiving stolen property from another were legally consistent. A person can enter a building with intent to steal, steal nothing while in the building, and later receive stolen property from another after leaving the building.

In *People v. Spears* (1986), 112 Ill. 2d 396, 493 N.E.2d 1030, a defendant was convicted of the attempted murder of his wife and counts of armed violence against his wife and Annette Keys, respectively. He was also convicted of two uncharged offenses of reckless conduct arising from his attack on the above described individuals. The convictions of armed violence and reckless conduct in regard to Annette Keys arose from a single shot which he had fired at her. Clearly, the mental state required for the armed violence conviction was inconsistent with the mental state required for the reckless conduct conviction, and the verdicts were legally inconsistent.

In *Spears*, the attack by the defendant upon his wife involved not

merely one but several shots and, thus, several acts, although committed in rapid succession. Accordingly, the State maintained that convictions for reckless conduct, attempt (murder) and armed violence arising from defendant's firing of several shots were not legally inconsistent, because his mental state could have changed from recklessness to intent as he fired the shots, even though that was not likely to have happened. The supreme court disagreed, concluding that separate mental states could not have existed for the firing of the several shots. The court noted that the State had made no charge of separate shots being fired and deemed that theory to be an afterthought. Then the court determined that the verdicts as to the offenses against defendant's wife were not only logically but also *legally* inconsistent. In making this determination, the court stated that "the *jury could not rationally* return guilty verdicts based on separable acts accompanied by otherwise mutually inconsistent mental states." (Emphasis added.) 112 Ill. 2d 396, 406-07, 493 N.E.2d 1030, 1034.

The *Spears* court's statement that "the jury could not rationally" have returned guilty verdicts under the circumstances existing there does give some inference that the court might be intending to overrule the previous rule that only legally, but not logically, inconsistent verdicts need to be set aside. However, any such inference is only *dictum*, because the court found the verdicts in question to also be legally inconsistent. If the court intended to overrule the previously announced theory of *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005, and *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, surely the court would have so stated. Rather, the opinion gives every indication of establishing a very narrow rule in regard to whether the court will permit consideration of a theory that the mental state of one firing several gunshots in rapid succession can be inferred to have changed between shots.

The situation in *Spears* vastly differs from the case at bar. Here, the defendant testified to a different version of events than that described by the State's witnesses but admitted committing an offense. The jury then found him guilty of both the offense which the State's evidence strongly indicates he committed and also the offense which he admitted committing. I do not interpret *Spears* to have prohibited the upholding of verdicts under circumstances where the evidence cannot logically be analyzed to show the commission of both offenses, but the nature of the offenses are such that the commission of one offense would not have negated the possibility of the commission of the other.

I agree with the majority that the court should be careful to take

steps so that the jury will not inadvertently render inconsistent verdicts and that appropriate instructions are desirable. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.) I also agree that the opinion in *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, at least gives the appearance of requiring the court to submit the theft by receipt of stolen property issue to the jury here. However, with the benefit of hindsight, I now believe that it should not have been submitted and maintain submission of these instructions should not occur where to do so creates the possibility of logically inconsistent verdicts.

*Dace* involved, as here, underlying cases where burglary with the intent to commit theft was charged, and the issue of theft was sought to be submitted to the jury. However, the *Dace* opinion makes clear that the theft offense sought to be submitted was the theft intended upon entry. Thus, convictions of both the burglary and the theft would have been both legally consistent and logically consistent under the evidence. As noted by the majority, the *Dace* court stated:

"The proof of the offense charged requires proof of *the specific intent* [citation], and the evidence adduced in each case would support a conviction of *theft* [citation]. We hold that under these circumstances, where the information charged the *specific intent to commit theft* and the offense of *theft* was proved by the evidence, refusal to give defendant's tendered instruction was error." (Emphasis added.) 104 Ill. 2d 96, 103, 470 N.E.2d 993, 996.

As the majority also points out, the *Dace* court rejected the inherent relationship test set forth in *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, and applied a much narrower doctrine. The *Whitaker* opinion states that, even under its wider application, the greater and lesser offense "must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of commission of the greater offense." (447 F.2d 314, 319.) Thus, even under the inherent relationship test, rarely would the question of the commission of an offense, under the evidence logically inconsistent with the offense charged, be submitted to the jury.

Finally, I view with caution and misgiving the statement of the majority that the requirement for the submission of the theft issue in this case derives from a right of an accused to have "instructions on his theory of the case." (161 Ill. App. 3d at 278.) This was the rationale of the court in *People v. Rivera* (1974), 186 Cclo. 24, 525 P.2d 431, cited by the supreme court in *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, as supporting the rejected inherent relationship test.

As shown by the majority, the statement that an accused has such a right has often been stated, but the majority does not indicate that the Illinois Supreme Court has set forth that rule since the advent of pattern jury instructions in 1968. While an accused is entitled to have the jury instructed as to a legal defense shown by the evidence (*People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850; *People v. Dortch* (1974), 20 Ill. App. 3d 911, 314 N.E.2d 324), the accused is not entitled to an instruction as to his evidentiary theory as to why he is not guilty. Here, any possible commission of theft of stolen property by defendant was not a defense to the burglary charge. The instruction as to that theft offense merely called the attention of the jury to defendant's contention as to the facts of the case.