THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID LEE WHITELOW, Defendant-Appellant.

Fourth District No. 4—87—0024

Opinion filed November 19, 1987.

Daniel D. Yuhas and Richard D. Frazier, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial on November 25 and 26, 1986, in the circuit court of Macon County, David Whitelow, defendant, was found guilty of the offenses of aggravated battery and reckless conduct in violation

of sections 12—4 and 12—5, respectively, of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4, 12—5). On December 11, 1986, defendant was sentenced to three years' imprisonment in the Illinois Department of Corrections. Defendant appeals alleging (1) the court erred by refusing to give self-defense jury instructions; (2) the court gave an erroneous jury instruction dealing with inconsistent verdicts; (3) the court considered improper factors in sentencing; and (4) the court improperly denied defendant credit for time served in another State awaiting extradition. We reverse.

During the trial, Bobby Joe Capers testified that on March 6, 1986, he and his cousin, Jessie DeBerry, were at a gambling house in Decatur, Illinois. An argument developed between DeBerry and Gene Woodland, and a fight ensued in the parking lot of a liquor store, Mr. Lucky's. After the fight, Woodland left and later returned with a shotgun. Capers went to Woodland and told him to put the gun down, which Woodland did. As Capers and DeBerry started to leave, defendant grabbed the gun from Woodland and fired it, striking Capers in the arm.

Sharon Evans testified she went to Mr. Lucky's on March 6 to purchase some beer. As she was leaving the establishment, she heard a shotgun blast and was struck by shotgun pellets. At the time, she was approximately one-half block from where the gun held by defendant discharged.

Jessie DeBerry testified similarly to Capers concerning the initial fight. However, he stated that upon leaving the gambling house, he and Capers saw Woodland with the shotgun. The defendant was standing next to Woodland. According to DeBerry, Woodland and Capers became involved in a discussion about the previous fight. As DeBerry and Capers turned to leave, DeBerry heard gunfire and turned, seeing defendant holding the shotgun. Both DeBerry and Capers said they heard defendant say, "I'll shoot it," prior to the gun's being fired. DeBerry and Capers admitted prior criminal convictions.

Gene Woodland testified that he, the defendant, DeBerry, and Capers were arguing face-to-face prior to the shooting. Originally, he and DeBerry were arguing, but then defendant and Capers started arguing. According to Woodland, DeBerry was standing with a broken bottle in his hand and looking "like he was going to do something to him or something like that." However, he did not see anyone go after anyone else. It was at this point that defendant took the gun from him, and it "accidentally discharged."

Defendant testified he was walking past Mr. Lucky's when he became embroiled in an argument with Capers and DeBerry. The two

started advancing towards defendant, and he was frightened as a result of Capers and his friends having beaten him on previous occasions. DeBerry had a broken bottle in his possession. Defendant ran looking for something with which to defend himself while Capers and DeBerry chased him. According to defendant, he ran up to Woodland and grabbed an object from his hands, not realizing it was a gun. He contended the gun discharged as he grabbed it. Defendant stated he did not intend to shoot or kill Capers.

Defendant was originally charged with the offenses of attempt (murder) and aggravated battery involving Capers and aggravated battery involving Evans. The jury found him guilty of the aggravated battery involving Capers and the included offense of reckless conduct involving Evans.

■ At the jury instruction conference, defendant submitted a series of instructions including those based on the self-defense theory. The court refused these, reasoning that defendant's theory of the case was accident and not self-defense. Defendant argues the court erred in refusing these instructions.

The State argues it was proper to refuse the instructions because defendant's defense was accident, and, in fact, he testified he did not intend to shoot Capers. However, we previously have held that a self-defense instruction may be appropriate even when the defendant testified the death resulted from accident. (*People v. Sloan* (1984), 129 Ill. App. 3d 242, 248, 472 N.E.2d 93, 98; *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 15, 414 N.E.2d 262, 264.) In *Buchanan*, the defendant alleged he pulled a handgun on the victim to protect himself. A struggle ensued, the gun fired, and the victim died. Our court stated:

> "Even though the shooting occurred during and as a result of the struggle and was in that sense accidental, the preceding events could place the shooting in the context of self-defense." (91 Ill. App. 3d at 15, 414 N.E.2d at 264.)

Similarly, in the current case, while defendant's testimony is that the gun discharged accidentally, the preceding events could place the shooting in the context of self-defense.

■ A defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which such defense is based are inconsistent with the defendant's own testimony. (*People v. Izzo* (1958), 14 Ill. 2d 203, 211, 151 N.E.2d 329, 335; *People v. Papas* (1942), 381 Ill. 90, 96, 44 N.E.2d 896, 899.) Even very slight evidence on a given theory of a case will justify giving an instruction. *People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31, 34; *People v.*

*Kalpak* (1957), 10 Ill. 2d 411, 425, 140 N.E.2d 726, 734.

In finding the defendant guilty of aggravated battery, the jury necessarily determined the testimony of the defendant as to accidental discharge was false because aggravated battery requires "intentionally or knowingly causes great bodily harm." (Ill. Rev. Stat. 1985, ch. 38, par. 12—4.) Assuming the shooting was intentional or knowing, we must examine the trial record to determine if any evidence indicated defendant was acting in self-defense.

Evidence requiring a self-defense instruction must meet the test set forth in section 7—1 of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 7—1). That section provides in part:

> "However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

Needless to say, a shotgun blast "is intended or likely to cause death or great bodily harm." We then must determine if some evidence indicated defendant could have reasonably believed his conduct was "necessary to prevent imminent death or great bodily harm to himself or another."

■ In this case, the testimony of Woodland and the defendant provide the evidence required. Their testimony indicates that Capers and his friends had previously beaten the defendant, and at the time of the present happening, DeBerry had a broken bottle in his hand. Defendant also testified that after running from Capers and DeBerry the only reason he grabbed the shotgun was to defend himself from them. While there is conflicting testimony, defendant's and Woodland's testimony is sufficient to sustain the giving of the self-defense instructions. Once a slight amount of evidence has been produced, it is a decision for the jury as to the justification of defendant's behavior. See *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. Stewart* (1986), 143 Ill. App. 3d 933, 494 N.E.2d 1171.

We are aware there are cases which have held that refusal to give self-defense instructions in somewhat similar situations is not error. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448.) However, we agree with the court in *People v. Stewart* (1986), 143 Ill. App. 3d 933, 936, 494 N.E.2d 1171, 1173, that those cases involved fact situations which precluded any possibility of the use of self-defense as an affirmative

defense, and, thus, are distinguishable.

■ The aggravated battery conviction must be reversed and remanded. We also recognize that where one justifiably shoots another and a third person is injured, the one shooting the weapon *may* not be guilty of an offense relating to the injury of the third person. (*People v. Adams* (1972), 9 Ill. App. 3d 61, 291 N.E.2d 54.) We necessarily reverse and remand the reckless conduct conviction.

■ Defendant also alleges he was denied a fair trial by the instruction the court gave for the purposes of avoiding legally inconsistent verdicts. The given instruction read:

"A verdict of either 'guilty' or 'not guilty' should be returned on the Attempt (Murder) and Aggravated Battery charges. If you find the defendant 'guilty' of Attempt (Murder) and Aggravated Battery, then you need not return a verdict on the lesser included charges. If you find the defendant 'not guilty' of the Attempt (Murder) and Aggravated Battery, then you should return verdicts of 'guilty' or 'not guilty' of the lesser included charges.

As to the greater charges you should return three (3) verdicts to dispose of those charges. As to the lesser included charges you should return four (4) verdicts to dispose of those charges."

Defendant specifically complains of the usage of "greater" and "lesser." He argues that such terminology deemphasizes the importance of the included offenses.

Our supreme court approved the use of jury instructions to avoid legally inconsistent verdicts in *People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203, and we have acknowledged the necessity and desirability of their use. (See *People v. Schmidt* (1987), 161 Ill. App. 3d 278.) However, it is imperative that when these instructions are given they do not take away the jury's necessary element of choice by deemphasizing the importance of offenses with lesser penalties. (See *People v. Pastorino* (1980), 90 Ill App. 3d 921, 414 N.E.2d 54, *rev'd on other grounds* (1982), 91 Ill. 2d 178, 435 N.E.2d 1144.) Since this cause must be retried, we find it best, in order to avoid any possible problem, to refrain from the use of the expressions "greater" and "lesser" in the instruction. While we realize drafting of this instruction can be complicated, we find the instruction approved in *Almo* serves as an adequate guide.

■ Since defendant must be retried, we need not address the remaining alleged errors. However, we note that a defendant confined in a foreign State by reason of an Illinois process is entitled, upon

conviction, to sentence credit for the time confined in the foreign State. (*People ex rel. Bradley v. Davies* (1974), 17 Ill. App. 3d 920, 309 N.E.2d 82.) Therefore, if defendant is convicted on retrial, he is entitled to a sentence credit for the 10 days he spent incarcerated in Wisconsin.

For the reasons stated above, the decision of the circuit court of Macon County is reversed and remanded.

Reversed and remanded.

SPITZ, P.J., and GREEN, J., concur.