(No. 29316.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MASHASK AUTMAN, Plaintiff in Error.

*Opinion filed March 20, 1946*

WM. SCOTT STEWART, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and C. D. PEMBERTON, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Mashask Autman, was indicted in the criminal court of Cook county for the murder of Charles O. Johnson. A jury found him guilty and fixed his punishment at imprisonment in the penitentiary for a term of fourteen years. Judgment was rendered on the verdict, and the defendant prosecutes this writ of error. There is no controversy as to the material facts. The only points raised by defendant are the refusal of the court to admit certain evidence offered by him and certain alleged errors in giving and refusing instructions.

The facts necessary to an understanding of the case may be summarized as follows: On the morning of May 26, 1945, about six o'clock, defendant was driving his Chevrolet automobile to his place of employment, a war plant on the south side, in Chicago. He was accompanied by three acquaintances who were his fellow employees in the same plant. Johnson was a taxicab driver and, at the

time in question, was driving a taxicab with one passenger. Both the car driven by defendant and the taxicab were moving south on South Park avenue. The cab was ahead. As they approached the Sixty-third street crossing, defendant drove around the cab and reached the intersection immediately in front of it. At the same time, the traffic light turned red and both the car and the cab stopped. The evidence discloses that when the light changed to green, defendant did not start his car forward immediately. He claimed the cab bumped his car from the rear. An argument ensued between him and Johnson and, during its course, defendant took a thirty-eight caliber revolver from the glove compartment, which he placed in his pocket. He then approached Johnson, the cab driver. Johnson had backed his cab some fifteen feet and was in the act of pulling around defendant's car on the left-hand side. Defendant was also on the left side of his car. He claims that Johnson then attempted to drive the cab against him. The cab was again stopped alongside the car of the defendant. At that time, defendant walked up to the left front door of the cab and, while Johnson was seated beneath the wheel, shot him through the head from a distance of two or three feet. Defendant claimed, however, that he saw the driver of the cab reach with his right hand toward the glove compartment on the right side of the dashboard; that he thought Johnson was reaching for a gun, and fired the shot. In this, he was corroborated by three witnesses who were riding in his car. There was no other dispute among the witnesses who were passengers in the automobile of the defendant, the passenger in the cab, and one witness who was standing on the sidewalk, as to material facts. When the shot was fired, Johnson, the cab driver, slumped under the wheel. He died shortly thereafter on the same day. Immediately after shooting Johnson, defendant returned to his automobile and, together with his three companions, left the scene of the

accident. Instead of going south on South Park avenue, as he was headed, he turned west on Sixty-third street. He drove on to his place of employment. Within a short time after the shooting, Johnson's cab was searched by the police. No gun or other weapon was found in the cab.

The shooting occurred at about six or six-fifteen A.M. Sometime in the afternoon of the same day, the police took defendant into custody at his place of work. He surrendered to them the pistol with which he admitted he did the killing. At that time, the gun contained five loaded and one empty cartridges. Upon the trial, defendant admitted the shooting, but claimed he was acting in self-defense. His contention was that the cab driver attempted to run over him with his cab and that he shot him for this reason, believing that his own life was in danger. All the evidence shows, however, that, at the time the fatal shot was fired, defendant was not in front of the cab; that the cab had been stopped and was standing still when defendant walked up to the left door of the cab, opposite the driver, and deliberately shot Johnson through the head at close range.

On the trial, defendant called as a witness one William Walter, who was employed as superintendent in the plant where he was employed. Defendant offered to prove by this witness a conversation concerning the shooting in which the witness told him to "Wait until the boss comes in and talk to him." In connection with this conversation he offered to prove by the boss that in a conversation with defendant the boss told him that he would get in touch with an attorney, or "Wait until I talk to an attorney." These conversations took place sometime around the noon hour on the day of the shooting. Objections were sustained by the court to both of these conversations. This is assigned as error. It is contended that the conversations tended to explain defendant's flight from the scene of the crime, and were admissible for this purpose. Defendant

also testified that, "After I shot that man in the head at the time I tried to get away before I would get hurt and I didn't know the man was even hit," and that as he drove away he "saw three cab drivers."

The theory of defendant is that when he reached his place of employment shortly after the shooting, he talked to the witness Walter, who was his superintendent, about calling the police and surrendering; that, at Walter's suggestion, he waited until he could talk to the witness Bingham, who was his boss; that after talking with Bingham, he waited until Bingham could talk to an attorney, and that before Bingham had talked with an attorney and advised him what to do, the police appeared on the scene and picked him up. While defendant offered to prove the conversations by Walter and Bingham, it is significant that he himself did not testify or claim that his failure to notify the police was because of any conversations he had with these witnesses or any advice given or suggestions made by them.

Proof of flight by the accused in a criminal case is admissible as a circumstance tending to show consciousness of guilt. It is only a circumstance which may be considered by the jury as tending to prove guilt and must be considered in connection with all the other evidence in the case. (*People* v. *Herbert,* 361 Ill. 64.) In the case cited, this court said that flight, in criminal law, is defined as "the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. Such consciousness and purpose is that which gives to the act of leaving its real incriminating character." In all cases the defendant has a right to show, by any competent evidence, facts which tend to prove that he did not leave the scene of

the crime from a consciousness of guilt, but that his act in leaving was consistent with his innocence. *People* v. *Bundy,* 295 Ill. 322.

Here, the defendant, in his testimony, offered no plausible explanation for his flight from the scene of the crime or excuse for the fact that he had made no effort to contact the police or to surrender. He admits that he fled from the scene of the crime and proceeded to his place of employment by a different route and by different streets from those which he was accustomed to following, and from the route he was following immediately prior to the shooting. The killing occurred about six o'clock A.M. He remained at work at his place of employment until sometime in the afternoon when the police appeared and placed him under arrest. As already observed, he made no claim in his testimony that his failure to contact the police was because of any advice he had received from, or any conversations he had had with, either his superintendent or his boss. Without such claim in his own testimony, proof of the conversations with his superintendent and his boss would have been of little, if any, aid to him. The rule that an accused may offer evidence explaining his flight does not change the rule as to the competency of testimony, nor does it render incompetent evidence admissible. These conversations were not admissible. They were conversations between defendant and third parties. They were no part of the *res gestae.* The statements offered to be shown by these witnesses to have been made by defendant were purely self-serving. They were not admissible for any purpose. The court did not err in sustaining the objections.

Having reached the conclusion that the court properly sustained the objections to proof of the conversations had by defendant with his superintendent and his boss, this eliminates the objections of defendant to instruction No. 2, given on behalf of the People. It is stated in the argument

of defendant: "Our complaint is not as to the form of these instructions, although it does seem as if the subject was over-emphasized in the court's instructions. Similar instructions are often given. Our complaint is that the instructions accentuated the harm done the defendant by the error of excluding his evidence." Instruction No. 14, given on behalf of the defendant, told the jury that flight was no evidence of guilt, if such flight was reasonably explained. It is insisted that by giving instruction No. 2, for the People, and instruction No. 14, for the defendant, the court overemphasized the failure of the defendant to corroborate his own testimony by proof of the conversations offered. This contention cannot be sustained. It was not error for the court to refuse to admit evidence which was clearly incompetent, even though such offered testimony tended to corroborate the defendant in his explanation of his failure to contact the police.

Defendant's next contention is that the court erred in refusing to give instruction No. 22, offered by him. This instruction told the jury that flight is "only a slight circumstance" tending to show guilt which the defendant may explain and, if explained to the reasonable satisfaction of the jury, "it should not be considered against him." The same principle governing the subject of flight was covered by instruction No. 14, given in behalf of the defendant. Instruction No. 22 was properly refused.

Instruction No. 9, given on behalf of the People, in substance, told the jury that the court was the sole judge of the law and the jury had no right to disregard the law or any part of it, as given to them by the court in the instructions, and that it was the sworn duty of the jury "to accept the whole of it, as it is given to you by the court and apply it to this case." It is argued that this instruction erroneously told the jury that they should apply to the case all of the law given by the court in its instructions. It is said that a study of the instructions as a series dem-

onstrates that they were inconsistent with each other and it was impossible to apply all the law, given by the instructions, to the case. This instruction stated a correct rule of law and is not subject to the criticism made by the defendant. The instructions, as a series, stated the law applicable to the case, and it was not error to instruct the jury that it was their duty to accept and apply the law announced in the instructions.

Instruction No. 1 is objected to. This was an instruction defining the crime of murder in the language of the statute. It is argued that the jury, in order to apply the law given in this instruction to the case, was compelled to imply or assume that the killing was done with malice. We do not so read the instruction. It was simply the statutory definition of murder. It was not necessary that the element of self-defense be incorporated in this instruction. It did not direct a verdict, but simply defined the crime with which the defendant was charged. Instruction No. 1 neither ignores nor nullfies the theory of self-defense. *People* v. *Grady,* 381 Ill. 224.

The next objection is to instruction No. 7, given on behalf of the People. This instruction on the subject of self-defense states that "if you believe from the evidence that the defendant was struck, * * * and if you further believe from the evidence, beyond a reasonable doubt, that the defendant at the time of such assault did not in good faith believe that he was actually in danger of death, or of receiving great bodily harm, then you should find the defendant guilty." It is argued that this instruction was confusing because it is said Johnson did not actually strike the defendant. The evidence shows that the defendant testified he was struck by the cab driven by Johnson; that he jumped but could not get away, and that he was caught by the fender and thrown to the ground. The question whether Johnson struck the defendant with his taxicab was injected into the case as a question of fact

by the defendant's testimony. While it is true that no witness, not even his three friends who were riding in his car, corroborated the defendant in his testimony that he was struck by the taxicab, it was a question of fact injected into the case by the defendant himself. With this question of fact in the case, the instruction was proper. It simply told the jury that in order to justify a verdict of guilty it must believe beyond a reasonable doubt that the defendant at the time of the assault did not, in good faith, believe that he was actually in danger of death or of receiving great bodily harm. The argument of defendant against this instruction confuses the evidence as to the striking of the car of defendant by the taxicab and the testimony of defendant that he himself was struck by the taxicab, when the cab driver attempted to drive around the car.

The same is true of instruction No. 8, given on behalf of the People. This instruction is also on the subject of self-defense. It tells the jury, in substance, that although Johnson made the first attack upon the defendant, yet if the jury believed beyond a reasonable doubt that, under the circumstances, it did not appear to the defendant, acting as a reasonable man, that the infliction of the mortal wound on Johnson was necessary, or apparently necessary, to save his own life, the jury should find the defendant guilty. Here, again, defendant, in his argument, confuses the "first attack." It is argued that the "first attack," mentioned in the instruction, referred to the act of Johnson in bumping the defendant's automobile. We do not think the jury could have been so confused by this instruction. The record is clear that the defendant did not rely upon the bumping of the automobile with the taxicab as the attack justifying self-defense, but rather on his testimony concerning the effort of the driver of the taxicab to run him down and injure him immediately before the shot was fired. The jury could not have been misled by

either instruction No. 7 or No. 8, and there was no error in giving them.

Objection is made to instruction No. 3, given on behalf of the People, on the ground it is argumentative and inapplicable without sufficiently pointing out any specific error relied upon. This was also an instruction on the subject of self-defense. The objections to this instruction, like the objections to the other instructions above discussed, are highly technical and supercritical.

Defendant complains of the refusal of the court to give instructions Nos. 24, 25 and 26. Instruction No. 24 was substantially covered by instruction No. 23. Instruction No. 25 was fully covered by instruction No. 23. Instruction No. 25 was fully covered by instructions Nos. 3 and 7, given on behalf of the People, and by instruction No. 11, given on behalf of defendant. Instruction No. 26, offered on behalf of defendant, was also substantially covered by the above instructions.

The next objection is to instruction No. 4. This instruction was on the presumption of innocence. It is contended that the instruction is argumentative and calculated to take away the presumption of innocence. In support of this contention, defendant cites *People* v. *Kopke,* 376 Ill. 171. Instruction No. 4 was not at all similar to the instruction on the same subject discussed in the *Kopke case.* The instruction is not subject to the criticism or objections made against it. The law touching the presumption of innocence to which the accused was entitled is stated fully and fairly. *People* v. *Tuohy,* 361 Ill. 332.

Complaint is also made of the refusal of the court to give instruction No. 16, offered by the defendant. This instruction was fully covered by instruction No. 13, given on behalf of the defendant. Instruction No. 18 was fully covered by instruction No. 4.

Notwithstanding the fact that many of the objections argued are highly technical, a careful examination of the

entire record has been made. Such examination clearly demonstrates that there is no merit in any or either of the contentions made on behalf of defendant. The evidence, although conflicting, is not complicated, and if the version of occurrence witnesses other than defendant himself was considered credible, the jury was warranted in concluding that defendant deliberately armed himself and shot Johnson to death without sufficient provocation, and with malicious intent. Under these circumstances, this court will not substitute its judgment for the verdict of the jury. Defendant received a fair trial, under proper instructions of the court, and his conviction of the charge of murder is amply supported by the evidence.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*