(No. 35751.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN D. HARRIS, Plaintiff in Error.

*Opinion filed November 30, 1961.*

JOHN M. BOWLUS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, John D. Harris, was found guilty of burglary by a jury in the criminal court of Cook County,

adjudged an habitual criminal, and sentenced to life imprisonment. On this writ of error, he contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt, and that the court and the State's Attorney improperly commented on the fact that he did not testify.

The record shows that shortly before nine o'clock on the morning of July 3, 1958, two men came to the door of the home of Harold Eberhardy, a plumbing contractor, in Northfield. Eberhardy and his wife had already left for work, but Mrs. Eberhardy's mother, Mrs. Firgeus, aged 63, was at home with James Eberhardy, aged 6, and two younger children. The men asked Mrs. Firgeus for a glass of water and, when she returned to the door with it, tossed the water in her face and forced their way inside. James testified that he saw them take off her glasses, shut her up in a bathroom, ransack the house, and leave with two piggy banks and two guns which they found behind a filing cabinet in the room which served as Eberhardy's office. Officer Berendsen of the Northfield police arrived shortly after the two men left. He talked to James and made written notes of what the boy told him. He then left. Soon thereafter Eberhardy returned from work. After talking with his son, he went to his files and produced the name and address of the defendant, whom he had formerly employed as a laborer.

The only witness to the crime who testified was James Eberhardy. He had seen Harris on three or four occasions while Harris was working for his father. On one occasion Harris had helped Harold Eberhardy build a sandbox for James, and on another, had moved some furniture inside the house. James identified Harris in court as one of the two men who had committed the crime, and said that he recognized him as a former employee of his father.

It is reasonably clear from the record that officer Berendsen's notes, taken before James had talked to his father, contain no mention of the defendant. However, his

notes of his conversation with Harold Eberhardy contain the words "suspect John D. Harris." James testified that he had not called the burglar by name when he was in the house or had any conversation with him. He also testified that his father had told him defendant's name. On the day of the crime, officer Berendsen showed James a photograph of the defendant. The boy testified both that he was shown only the one picture, and that he was shown "a whole pack of pictures." He was also shown the defendant's picture again before he was taken to the police station to identify him.

Patricia Revak, who lives near the Eberhardys, testified that she saw an Oldsmobile parked in the center of the intersection close to the Eberhardy's house and that she gave a description of the car and its driver to the police. She did not, however, identify the defendant as having been in the car. Other testimony indicated that the car that she had seen was similar to the one that the defendant had sometimes used while working for Eberhardy.

Another witness, Patricia Rowley, was a waitress in Seul's restaurant, located near the Eberhardy home. She testified that she had not known Harris before July 3rd, but that on that morning he came into the restaurant with another man, had a cup of coffee, stayed for five to seven minutes, and then departed. "No more than ten minutes" later, officer Berendsen appeared and talked to her about the crime. That evening he showed her three pictures and she selected the defendant's from among them. In January of 1959 she was taken to see the defendant in his cell at the police station and identified him as the man who had been in the restaurant.

We are of the opinion that the conviction can not be sustained on this evidence. Before Mrs. Firgeus's glasses were removed she had an opportunity to observe the burglars. She had seen the defendant on an earlier occasion when he moved some furniture into her room. She was not

called as a witness. Officer Berendsen's notes apparently do not indicate that James had identified the defendant independently of his father's suggestion. The testimony concerning them rather suggests the contrary.

It may be that the defendant, in broad daylight, burglarized a house that he knew was occupied by persons who knew him, and knew his name and address. It may be, too, that he then stopped at a nearby restaurant for a leisurely cup of coffee after he had committed the crime. But this record does not establish these facts beyond a reasonable doubt. Mrs. Revak's testimony is not of great significance. Before the crime was committed, she saw a conventional type of automobile, similar to one the defendant had sometimes used, parked near the scene of the crime in such an unusual way that it blocked three-quarters of the road, She described the driver to the police, but she did not identify the defendant. Nor is it particularly significant that Harris had known where the guns were kept. The whole house was ransacked, furniture was pulled away from the walls and mattresses were pulled off the beds. It is not surprising that the burglars also searched behind the filing cabinet.

There was testimony by police officers of the city of Evanston, where the defendant lived, that he was in a cell in the Evanston jail at 9:30 P.M. on July 7, and that he escaped from jail that evening. He was subsequently extradited from Georgia. It does not appear, however, that the defendant knew that he was suspected of the Eberhardy burglary. The inference of guilt that may be drawn from flight depends upon the knowledge of the culprit that the crime has been committed and that he is or may be suspected. Here the record indicates that the defendant came to the Evanston police station and voluntarily surrendered himself in connection with an unrelated charge of assault.

· The comments about the defendant's failure to testify will not recur upon another trial, and therefore need not be discussed. While the trial judge indicated that he would

have preferred not to impose a life sentence, he did so upon the prosecutor's insistence that he had no discretion to do otherwise. This was error. The offense was governed by the Habitual Criminal Act of 1957, which provides that the "court may impose any sentence permitted by the statute defining the principal offense," which in this case was imprisonment "for any term of years not less than one year or for life." Ill. Rev. Stat. 1959, chap. 38, pars. 603.9, 603.5, 84.

The judgment of the criminal court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*