31 Ill. App. 3d 38, 332 N.E.2d 750; *People ex rel. McGrady v. Carmody* (1968), 104 Ill. App. 2d 137, 243 N.E.2d 19.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONNIE L. SIMPSON, Defendant-Appellant.

Third District   No. 74-316

Opinion filed August 18, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Robert A. Downs, State's Attorney, of Lewistown, for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Ronnie L. Simpson was indicted for burglary of a drugstore and for theft of certain drugs, watches, and currency, having a total value of less than $150. He was tried before a jury, found guilty of theft under $150, and was sentenced to 360 days at the State Penal Farm in Vandalia.

He appeals the conviction, and asserts as error the improper admission of hearsay evidence and prejudicial closing argument by the prosecutor.

The evidence at trial showed that someone broke into the Taraboletti Pharmacy in Canton, Illinois, about 11 p.m. on April 16, 1974. Large quantities of various barbiturates and other drugs, syringes, needles, two Timex watches, and some cash were taken from the store. About three hours later defendant and Richard Emery were seen together in a grocery store in Bartonville, Illinois. There defendant encountered an acquaintance, Pierre DeLorme, with whom he left the store. He got into a car with DeLorme, George Sigler and Joe. Signe, who owned the car. Emery also left the store and got into his own car.

DeLorme testified that defendant asked for a ride out of Bartonville, and said he was "in trouble about the drugstore thing." Defendant also said he had some drugs referred to as "downs." Sigler testified that he heard defendant and DeLorme talking in the back seat about a drugstore burglary, and defendant said he was in trouble. Sigler also heard defendant say he had "yellow jackets, reds and syringes." Signe drove around the block and saw police talking to Emery in his car near the store. Sigler got out of the car, and talked to the policeman. A short time later, he rejoined his friends in a nearby apartment, and told Signe to get defendant back to the store because the police wanted him.

Meanwhile, after Emery left the store and went to his car, a Bartonville police officer came up to investigate Emery's car, which had no license plates and was parked on a sidewalk. While checking a windshield sticker with his flashlight, the officer saw two brown paper bags in the front seat area of the car. One bag was open with needles and syringes in plain view. Emergy, who was sitting behind the wheel, handed the bags to the officer when the officer asked permission to search the car. The bags contained large numbers of loose barbiturate capsules in plastic bags, and some bottles of capsules as well as needles and syringes. Emery later took police to a location in Canton and to another place along a road outside of Bartonville where empty drug containers and other items from the drugstore burglary were found.

The disputed testimony involved the police officer's account of statements made by Emery while the officer was interviewing him at his car. The officer testified that, when Emery handed him the bags, Emery said they belonged to defendant. The court sustained defendant's objection that Emery's statement to the officer was hearsay, and instructed the jury to disregard it.

The officer then related that, while he was standing by the car holding the bags, defendant came walking along the sidewalk toward the car. The officer testified first that defendant said, "It ain't mine, man," and that defendant's statement was in answer to Emery, who had called out, "I am

not going to take the rap for you." Defendant's objections that both these statements were hearsay were overruled, and, on appeal, defendant contends that Emery's statement to defendant was incompetent hearsay evidence and admission of that evidence was prejudicial. Emery was not called as a witness.

Defendant suggests that Emery's statement was asserted "to show the truth of the matter" that defendant had taken part in the theft, and thus depended for its value upon the credibility of the out-of-court declarant, Emery, who was not available in court for cross-examination. See, *e.g.*, *People v. Harden* (5th Dist. 1974), 24 Ill. App. 3d 304, 320 N.E.2d 587.

The State argues that the officer's account of this conversation was admitted to show that such a conversation took place, and not to prove that defendant committed a theft of the drugs. In *People v. Thomas* (3d Dist. 1975), 25 Ill. App. 3d 88, 322 N.E.2d 597, a similar objection was raised when a police investigator testified that he arrested defendant on the basis of information given him by defendant's confederate and an informant. After finding that defendant had waived this issue by failing to raise it in the trial court, this court went on to say:

> "The statement was properly admitted, in any event, as testimony of the witness to the effect that another person made an extra-judicial statement, where the purpose is not to show the truth of such statement but to show the reason why the witness followed the course of conduct which he did and the fact that he relied and acted upon the information so received. Such statement was not objectionable on the ground that it was hearsay * * * . [The police investigator] did not testify as to what was said in the third-party conversation, as it pertained to defendant, but rather he testified that such statements as were made to him were the basis of his investigation that led to defendant's arrest." 25 Ill. App. 3d 88, 92, 597, 600.

■■ Unlike *Thomas*, the police officer here did testify to what Emery said to defendant, and he did not testify that Emery's statements were the basis for defendant's arrest. Furthermore, when the trial court overruled defendant's objection to this testimony, the jury was not instructed that Emery's statement accusing defendant could be considered only for some limited purpose and not as proof of defendant's guilt. Thus, there is nothing in the record to show that the conversation was admitted for any purpose other than to prove that defendant took part in the theft of the drugs.

■■ Assuming that the testimony was offered to prove the truth of the assertions it contained, then under orthodox concepts this testimony would be hearsay and would be admissible only if it fell within a recognized exception to the hearsay rule. Consequently, the value of

Emery's statement rested upon the credibility of Emery, the out-of-court asserter, who was not available for cross-examination, and the statement was thus not admissible. In *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, the rule was stated, as follows:

> "[T]he essential feature, without which testimonial offerings must be rejected, is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the act asserted."

See also *People v. Cook* (1965), 33 Ill. 2d 363, 211 N.E.2d 374; McCormick, *Evidence* ch. 24, §245, 583. (2d ed. 1972).

We must also reject the State's contention that Emery's statement was not hearsay because defendant was present and took part in the conversation. As is stated in McCormick, on *Evidence* ch. 24, §246, at 586 (2d ed. 1972):

> "The presence or absence of the party against whom an out-of-court statement is offered has significance only in a few particular situations, e.g., when a statement spoken in his presence is relied upon to charge him with notice, or when failure to deny a statement spoken in his presence is the basis for claiming that he acquiesced in or adopted the statement." (Footnotes omitted).

Although the misconception persists that characterization of a conversation as hearsay depends upon the absence of the defendant, the Illinois Supreme Court has expressly rejected that notion. *People v. Cook; People v. Carpenter.* Furthermore, Emery's hearsay statement was not rendered admissible by the State's strategy of having the officer first testify to defendant's denial that the bags were his and thereafter relate Emery's accusation in order to explain the defendant's statement.

Under this set of circumstances, we can only conclude that the jury's finding was based in part on incompetent evidence which denied defendant his right to a fair and impartial trial. We believe that justice will be better served in a new trial, free from such error, and we remand the case for that purpose.

■■ Defendant also contends that the prosecuting attorney improperly stated his personal belief of defendant's guilt in closing argument. Defendant made no objection at trial, and thus the alleged error, if any, was waived. *People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385.

Accordingly, we reverse the judgment entered by the circuit court and remand this cause for a new trial consistent with the views expressed in this opinion.

Reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.