THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES MOODY, Defendant-Appellant.

First District (4th Division)   No. 78-808

Opinion filed August 23, 1979.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Rimas F. Cernius, and Terence P. Gillespie, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Charles Moody, was convicted of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) following a jury trial and was sentenced to three to nine years in the penitentiary. On appeal he contends: (1) evidence concerning certain physical items found at the burglary scene should not have been admitted since those items were insufficiently connected to the burglary and to the defendant; (2) hearsay evidence was improperly admitted against him; (3) his due process rights were violated when the prosecution was permitted to introduce evidence of statements attributed to him which they had failed to disclose in compliance with discovery; (4) the prosecution failed to prove defendant's guilt beyond a reasonable doubt.

We affirm the judgment of the trial court.

At trial Walter Patterson, the owner of the home involved, testified that on September 1, 1976, before going to bed he checked the five doors leading into his basement and up into the upstairs living area of his home. The outermost door, which led into a small shed-like structure covering the basement door, was secured that night with a chain and padlock. Immediately inside this door were three descending stairs and the second door which was unfastened. A few steps in from that door was a third door locked with a key and a wooden bar across the inside. From this door there were stairs up to a thin unfastened door leading to a toilet;

from there a fifth door opened to the dining area. This fifth door was also fastened with a bar across it from the inside. Mr. Patterson noticed nothing unusual about these doors when he checked them that night. The next morning he left his home about 5:30. When he returned home about 4 p.m. he found that the outside door to the basement had been opened by removing the screws from the hinges. The second door was intact but the third door had been broken off the bottom hinge and the top hinge was bent. The fifth door leading to the dining room had scratches on the hinges and those hinges were pulled slightly apart from the face of the door. Nothing had been taken from the house. Mr. Patterson testified that he found a right-hand glove lying in front of the outside basement door. He described it as black or brown leather with a cloth back. A day or two later he found a piece of iron pipe, resembling a "sawed-off shotgun" in the bathroom. Mr. Patterson, who lived alone, had never seen it before. The pipe was subsequently introduced into evidence over defendant's objection. No objection was made to testimony concerning the glove. Mr. Patterson also testified that though he had seen the defendant in the neighborhood he did not know him and had not given him permission to enter his home.

Shelby Wash, Mr. Patterson's next-door neighbor, testified that a 2½-foot-wide gangway divided his home from Mr. Patterson's. The basement door to Mr. Patterson's home faced the gangway and the rear of Mr. Wash's home. About 9:30 a.m. on September 2, 1976, Mr. Wash was in his bedroom, which had a window facing Mr. Patterson's home. He awoke to the noise of construction equipment being used to clean up a neighbor's back yard. Sometime later as he lay in bed watching television with his wife he heard a scratching noise, sounding "most like wood-concrete," coming from the back yard or gangway. At first he paid no attention but then the noise got louder, sounding "like a push-bump." He went back into his back yard to investigate after looking out of his window and seeing no one. Mr. Wash walked toward Mr. Patterson's basement door and inside that door he saw the defendant, whom he had known for four or five years. The defendant lived across the alley and a few houses to the left of Mr. Wash's home. When Mr. Wash saw the defendant, the defendant had a black leather glove on his left hand and a screwdriver and "something similar to a screwdriver" in the other hand. Mr. Wash asked him why he was breaking into the house. Defendant said nothing but advanced towards him. Mr. Wash backed up onto his porch and defendant kept advancing. Mr. Wash then got a stick from his kitchen and returned to his porch. Defendant was still there, a step off the stairs, looking "kind of wild." Mr. Wash told his wife to call the police and defendant said "Don't call the police, man, because I don't want to go to jail." Testimony about this statement was admitted over defense

objections. Mr. Wash told him to put the door back on the hinges. Mr. Wash then testified, over defense objection, that defendant was in the process of doing so when a child came through the gangway and said in a normal tone of voice that the police were coming. Defendant then left at a "kind of rapid" pace. Later that day Mr. Wash inspected the doors with Mr. Patterson and observed the same damage that he had described. However, Mr. Wash did not see any piece of iron lying in the house.

On cross-examination Mr. Wash described the glove defendant was wearing as leather on the part he could see which was the back and fingers. He also stated that he had noticed a black leather glove lying on the ground.

Mr. Wash's wife also testified for the State. She too heard a scratching noise coming from the gangway and then heard a pounding noise which was louder than the scratching. She followed her husband when he went out to investigate and saw the defendant in Mr. Patterson's basement. He emerged with a glove on one hand and tools in the other. She heard him plead with her husband not to call the police because he did not want to go to jail. When the boy came into the yard and said the police were coming defendant ran.

Defendant testified that he lived across the alley from Mr. Patterson, whom he knew "casually" from "living in the area." At 9 a.m. on September 2 he was in his home trying to make a phone call but was cut off. He went outside and saw that a construction crew had broken down a telephone pole, pulling the line away from his house. Defendant decided to fix it and called his mother from a neighbor's phone to inform her of his plan; she told him to go ahead. Defendant borrowed a screwdriver from one neighbor and started back for his home through Mr. Patterson's gangway. He noticed Mr. Patterson's basement door was open "away from the hinges." After speaking briefly to a construction worker he returned to the basement door. On direct examination he explained that he went back because the door was off the shed and he wanted to see if Mr. Patterson was in. On cross-examination he said he returned to borrow some tools. Defendant knocked on the outer door and called to see if anyone was there. Getting no response he entered and repeated the procedure at the next door. Again no one answered and he returned outside. There he saw Mr. and Mrs. Wash. Mr. Wash asked him what he was doing breaking into the house and said he would call the police. According to defendant, it was Mrs. Wash who then told her husband not to call the police. Defendant walked away without saying anything. At trial he denied wearing gloves, breaking into the house, pleading with Mr. Wash not to call the police, or running from the scene. He also testified that in 1971 or 1973 he had pleaded guilty to an unrelated burglary charge.

Defendant's mother also testified that he called her on the day of the

incident to tell her of his intention to fix the phone line. Mr. Wash in his testimony had testified that the Moody's phone line had been torn loose when a Caterpillar hit it.

## I.

Defendant contends that he was prejudiced by the admission of testimony concerning the glove discovered near the basement entrance and by admission as an exhibit of the iron bar found by Mr. Patterson in his home. He asserts that the State failed to properly lay a foundation for this evidence so as to connect it to the crime charged and to defendant as required under Illinois law. *People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.

Defendant did not include these alleged errors in his motion for a new trial and ordinarily that in itself would constitute a waiver of the issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, at trial defendant did not object on any basis to testimony concerning the glove and this too amounts to a waiver. (*People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694.) He never argued at trial that more of a foundation was required before that testimony should be admitted. Indeed, it was on defense cross-examination that more details about this glove were adduced. And though defendant did object to admission of the iron bar as an exhibit, he had not objected to testimony concerning discovery of the bar. Under these circumstances we agree with the State's contention that this issue has been waived on appeal.

But even if the issue was properly preserved for appeal, we would find no error in the admission of this evidence. There was a sufficient foundation to connect these items to the defendant and to the burglary. Defendant was observed by Mr. Wash wearing a black leather glove on his left hand as he emerged from the basement. Mrs. Wash also testified that he had on one glove at that time. Mr. Wash further testified that he saw a black leather glove lying on the ground. And Mr. Patterson said that when he got home he observed a glove lying right in front of the outside basement door from which defendant had emerged. On cross-examination he first described the glove as looking like black or blue leather; on further cross-examination he stated that it had a leather palm and a cloth back and was for the right hand. This evidence of a right-hand glove resembling a left-hand one seen on the defendant and found in the same location where he emerged from the burglarized premises was patently admissible. Discrepancies in description of the gloves were matters properly argued to the jury, but were not such as to bar admission of this evidence.

The iron bar was also sufficiently connected by testimony to the crime and to defendant. The Washes heard a bumping or pounding noise

coming from the direction of the basement just before they discovered the defendant emerging from it. A subsequent inspection that day revealed considerable damage to a number of the doors: one was broken off a hinge on the bottom and had a bent top hinge; the door from the bathroom to the dining room had scratch marks on the hinges and they were pulled slightly back from the door. Although the iron bar was not discovered for a day or two, it was found in the bathroom, where the evidence suggested the progress of the burglary was halted. Mr. Patterson testified that he had not seen the bar before and he was the sole occupant of the house. Although defendant contends the bar was unsuitable for prying or use as a crowbar, he has not chosen to include this item as part of the record on appeal. Furthermore, it is not necessary to establish that an item was actually used in a burglary provided it was suitable for such use and was connected to the defendant. (*People v. Craddock* (1964), 30 Ill. 2d 348, 196 N.E.2d 672; *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33.) Thus in *Craddock* burglary tools found in a building from which the accused had fled were held properly admitted against him. Here, even if the iron bar was not suitable for prying, it could still be of use to one attempting to forcefully enter a building. And there was evidence here suggesting that defendant was pounding on objects during his entry. This was not a factual situation analogous to that of *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401, cited by defendant, in which the crime was abortion and the contents of a bag found in a co-defendant's car were not described with such precision as to permit the court to find the proper connection with the crime. No such technical skills were involved here. Nor do we find comparable *People v. Urban* (1942), 381 Ill. 64, 44 N.E.2d 885, also cited by defendant, where burglary tools were found not at the scene of the burglary but in a garage which the court found was not in the exclusive control of the defendant. The defendant in that case was not even placed at the scene of the crime. Here defendant was caught at the scene with a left-hand glove resembling a right-hand one found at the same location. The testimony of two witnesses tended to suggest that a pounding or bumping was part of the entry and a tool capable of this was found on the premises. The question of the suitability of this instrument for use in certain facets of the break-in, like that of discrepancies in descriptions of the glove, was a matter for argument to the jury and not a bar to admission of the evidence. We find no error on this point.

## II.

■■■ Defendant also objects to the admission of testimony that he fled after a boy came into the yard and said the police were coming. The record clearly indicates that the purpose of this testimony was to prove

that defendant fled when he believed the police were coming. Such evidence of flight is admissible to show consciousness of guilt where a defendant has knowledge of the crime and of his status as a suspect. (*People v. Harris* (1961), 23 Ill. 2d 270, 178 N.E.2d 291.) Defendant concedes that the statement was not offered to establish that the police were in fact coming, so that it was not objectionable as hearsay used to prove the truth of the statement made. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738; *People v. Devine* (1977), 55 Ill. App. 3d 576, 371 N.E.2d 22.) Rather, defendant contends that the statement was designed to prove that he had enlisted the boy as a lookout pursuant to his criminal plan; thus the statement would be inadmissible as part of hearsay in the form of assertive conduct. (See *People v. Higgs* (1973), 11 Ill. App. 3d 1032, 298 N.E.2d 283.) We find no basis for such an inference. The evidence was that the boy spoke in a normal tone of voice, and there is no indication he even directed his statement to the defendant. No argument concerning a lookout was advanced to the jury by the prosecution. And even if such an inference could reasonably be drawn from this evidence, the statement was admissible for another proper purpose and could not be barred simply because a secondary improper purpose was possible. (*Mighell v. Stone* (1898), 175 Ill. 261, 51 N.E. 906; 75 Am. Jur. 2d *Trial* §§170, 171 (1974).) This case is thus distinguishable from *People v. Higgs* and *People v. Simpson* (1976), 40 Ill. App. 3d 1059, 353 N.E.2d 91, cited by defendant, where the reviewing courts found the *only* inference to be drawn from the evidence offered by the State was that the intended use was for a purpose rendering it inadmissible hearsay.

■■ Although defendant also contends that a limiting instruction should have been given we have noted that his construction was not a reasonable one and thus no instruction was required. Also, defendant never proffered such an instruction and so cannot now complain of the absence of one. *Storm v. Brown* (1973), 15 Ill. App. 3d 29, 303 N.E.2d 42.

### III.

Prior to trial the defense sought through discovery to obtain the substance of any oral statement made by defendant. The State in its answer to discovery stated that defendant had made no statements other than to give his name, age and address. However, at trial the State adduced testimony from Mr. and Mrs. Wash that when they told defendant they would call the police he pleaded with them not to do so because he did not wish to go to jail. When the defense objected to this testimony because of the State's failure to reveal the statement in response to discovery, the State asserted they were only obliged to disclose statements made by defendant to the police.

■■ ■ Although the State again claims a waiver of the issue by defendant

because he failed to list it in his motion for a new trial, we determine that his timely objection at trial was sufficient to permit the trial judge to consider the matter, thus satisfying the central purpose of the post-trial motion rule. (*People v. Norris* (1972), 8 Ill. App. 3d 931, 291 N.E.2d 184.) In addition, the possibility of prejudice arising from this failure of the State to comply with discovery is a sufficient basis to consider the issue as plain error. Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *People v. Torres* (1977), 47 Ill. App. 3d 101, 361 N.E.2d 803.

■■ Clearly the State's obligation of disclosure upon request extends to all statements of the defendant (*People v. Watkins* (1975), 34 Ill. App. 3d 369, 340 N.E.2d 92; *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593), and defendant's objection should not have been overruled on this basis. However, upon consideration of the issue we find no prejudice arising from the admission of this testimony and consequently find no basis for reversal on this ground. (*People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947.) The obvious purpose of this testimony, to show defendant's consciousness of guilt, was also accomplished by the evidence of his flight when told the police were coming as well as by his actions in beginning to repair the door when told to do so by Mr. Wash. This latter action was not the reasonable reaction of one innocently enmeshed in misleading circumstances. Furthermore, as we discuss below, the evidence of defendant's guilt, although partially circumstantial, was strong. Accordingly, we hold that admission of this testimony could not reasonably have affected the verdict and was harmless error. *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Ridener* (1970), 129 Ill. App. 2d 105, 262 N.E.2d 509.

## IV.

■■■ Finally, defendant asserts that the State failed to establish his guilt beyond a reasonable doubt. We find that his guilt was proved by overwhelming evidence. The applicable portion of the burglary statute provides:

"A person commits burglary when without authority he knowingly enters * * * a building * * * or any part thereof, with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a).)

The proof in this case established without contradiction that defendant knowingly entered without authority the home of Walter Patterson. What is primarily contested is the intent of the defendant to commit a theft in the home. Such intent to steal ordinarily must be proved circumstantially by inferences drawn from the conduct of the defendant and the circumstances surrounding that conduct. (*People v. McCoy* (1972), 3 Ill. App. 3d 642, 279 N.E.2d 417.) Defendant need not have actually taken

anything (*People v. Barge* (1972), 7 Ill. App. 3d 721, 288 N.E.2d 492), and certainly it is not necessary that he emerge from the premises with stolen items in hand. (*People v. Sigman* (1976), 42 Ill. App. 3d 624, 356 N.E.2d 400; *cert. denied* (1977), 434 U.S. 839, 54 L. Ed. 2d 102, 98 S. Ct. 133.) Indeed, the intent may be drawn from the fact of breaking into the premises where there are no circumstances inconsistent with this conclusion. (*People v. Semma* (1974), 19 Ill. App. 3d 776, 312 N.E.2d 746.) Here, immediately after pounding and bumping noises were heard from the direction of the basement entrance, defendant was found inside that entrance and the outside door was found to have been forcibly opened. Later it was determined that other inside doors had also been tampered with. Defendant emerged with a screwdriver in hand. When he was accused of having committed the damage and was told to repair it he began to do so. Then when informed that the police were coming he fled. Although defendant attempted to place an innocent construction on these circumstances, his tale of wanting to borrow tools to repair a phone line was obviously rejected by the jury and did not even explain the noises heard just prior to his discovery or his behavior after that discovery. Under these circumstances we are left with no doubts concerning the satisfactory nature of the State's proof of his guilt.

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.