THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
IRVIN McNEAL, Defendant-Appellant.

Fourth District    No. 15896

Opinion filed September 10, 1980.—Rehearing denied October 3, 1980.

Richard J. Wilson and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Gary J. Anderson and Darryl Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions for aggravated battery and armed violence following a jury trial and the sentence of 10 years' imprisonment on the armed violence conviction. On appeal defendant contends that the trial court erred (1) in allowing a witness to testify to the statement of an unidentified person at the scene, (2) in allowing the State to present evidence of flight, (3) in allowing the defendant's prior conviction for burglary to be used for impeachment, (4) in convicting defendant of armed violence in violation of the double jeopardy clause of the fifth amendment, and (5) in convicting defendant of both aggravated battery and armed violence based upon the underlying felony of aggravated battery.

■■ The State correctly concedes that here the defendant can not be properly convicted of both armed violence and aggravated battery. The armed violence statute provides enhanced penalties for a defendant who commits a felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) The armed violence conviction was for the commission of an aggravated battery while in possession of a gun. Under these circumstances, the aggravated-battery charge is a lesser included offense of armed violence and must be vacated under the authority of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. The defendant was sentenced by the trial court only on the armed violence conviction and therefore a remandment for resentencing is unnecessary. With regard to the other four issues raised by the defendant, we affirm.

The testimony in this case is conflicting, as many different versions of the events were offered at trial. The basic facts follow. The defendant and numerous other persons including the complainant, Dennis King, were in a private club in Danville, Illinois, known as "Sheri's" or the "Blue Room" on

the night of March 11 and the early morning hours of March 12, 1979. At about 1:30 a.m., in the back room of the bar, Dennis King asked Randy Stacker for a "hit of speed," Randy refused the request and Dennis then started a fist fight with Randy. The owner and two of the employees of Sheri's escorted the two men upstairs and outside (the bar was basement level), and the fight resumed. Accounts varied, but the fight was broken up by either the defendant, who was a friend of Randy Stacker, by one of King's brothers or by Stacker's brother. During the fight, defendant was involved in an argument with two female cousins of Dennis King. After the fighting ended, Randy Stacker went to the hospital and most of the rest of the persons present went back downstairs.

Two basic versions of the downstairs occurrence were testified to at trial: That of friends of the defendant and defendant himself; and a second by Dennis King and his friends and relatives. The defendant's version was that defendant went back downstairs into the bar after the fight upstairs before Dennis King. Defendant went over to a table and told a friend of his that he was going to leave because somebody wanted to hurt him and talked about shooting him. According to one of the defendant's friends, King then entered the club and said, "I am looking for you m ____ f ____ and I have got something for you." As this version of the event went, King appeared to have a weapon in his hand because of the manner in which he was holding a vest over his hand. At the time, King's two brothers were beside King, one of whom was holding a cane in the air. The three Kings approached the defendant and when Dennis King was five to six feet from defendant, the latter shot King, assertedly aiming for the hand in which King appeared to be holding a gun.

The King version of the event was that King came into the bar after the altercation outside prior to the defendant. Defendant then entered the bar and said, "Where's the m____f____at?" The defendant then walked toward King and shot King when they were five to six feet apart. The bullet struck King in the genitals. After defendant shot King, he stayed in the bar for 15 to 20 seconds and then left. According to the King version, King's jacket was torn up during the fight upstairs and he never found his jacket after the fight. King denied having any weapon in his hand at the time he was shot. No weapon was ever actually seen in King's possession by any of the witnesses, and no weapon was found on his person on the evening he was shot.

Defendant's defense was self-defense and he claimed that he feared that King was going to do great bodily harm to him at the time he shot King. At trial, a bartender at Sheri's, Spencer Nunn, testified that just prior to the shooting incident he heard a female voice say, "Irving, don't do it." He did not see the person who made the statement, nor did he see the shooting,

although he was in the bar at the time. The owner of the club, James Crockett, was working on the night of the shooting but, like Nunn, did not see the shooting. Crockett testified that immediately prior to the shot being fired he heard a female voice say, "Don't shoot."

Defendant contends that he was denied a fair trial by the admission of these statements which he contends were inadmissible hearsay testimony. The State contends that under the spontaneous declaration or excited utterance exception to the hearsay rule, admission of the testimony of the unidentified bystander was not error.

It is apparent that the fact that defendant shot King is not a contested issue here. It is noted that the utterance is not accusatory in quality, and defendant concedes that the statements could be interpreted to be corroborative of defendant's claim of self-defense.

The supreme court has consistently held that for testimony to qualify as a spontaneous declaration and be admissible regardless of declarant's presence at trial three elements must be present:

> " '(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence.' (*People v. Poland* (1961), 22 Ill. 2d 175, 181.)"
> (*People v. Robinson* (1978), 73 Ill. 2d 192, 199, 383 N.E.2d 164, 168.)

Defendant argues whether the criteria for a spontaneous declaration can be met where the witness is not only unavailable but unidentified.

Rule 803(2) of the Federal Rules of Evidence provides for the admission of an excited utterance as an exception to the hearsay rule. (28 U.S.C. R. 803(2) (1976).) The Advisory Committee's Notes to that Federal rule state that the courts should be hesitant in upholding statements by unidentified bystanders as sufficient to fall within the excited utterance exception. 56 F.R.D. 305; Cleary & Graham, Handbook of Evidence §803.3 (1979).

In *Poland* and *Robinson*, it is emphasized that the underlying test of the relevance of the statement is whether there was a lack of time to fabricate on the part of the declarant. The witnesses who testified to the spontaneous declaration made clear that the words were uttered just before, or intermingled with, the sound of the shot that was fired. Such coincidence in time makes it difficult to complain that time for fabrication can be found, and we conclude that the combination of time and circumstances is so demonstrated as to come within the rule making spontaneous declarations admissible.

In addition to the statement in *Robinson* that a spontaneous utterance is admissible even though the declarant is not present at trial, it is held in *People v. Harris* (1961), 23 Ill. 2d 270, 178 N.E.2d 291, that a spontaneous

utterance is admissible even though the declarant was incompetent as a witness by reason of infancy. The test of admissibility again emphasized was the fact of the startling event and the absence of time or reason to fabricate. Compare *People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077.

■■ ■ In *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804, the supreme court expressly rejected the contention that the declarant must be shown to be a participant in the occurrence in order for the spontaneous utterance to be admissible. As to a further objection that it must be expressly shown that the declarant observed or witnessed the startling event, the court stated:

> "We do not understand the requirement to be that the party seeking to have the declaration admitted must prove by direct evidence beyond any possibility of speculation that the declarant personally observed the matters. If such were the rule, there would hardly ever be a case in which a declaration would be admissible. Rather, we think it is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable." (22 Ill. 2d 175, 183, 174 N.E.2d 804, 808.)

We conclude that the spontaneous utterances in evidence here meet the measure of admissibility so stated.

The fact that the declarant could not be identified is not a bar to admissibility. In *People v. Fields* (1979), 71 Ill. App. 3d 888, 390 N.E.2d 369, *appeal denied* (1979), 79 Ill. 2d 614, such an argument was expressly rejected. There, the victim was robbed as she walked along the street. Several persons responded to her hue and cry and pursued an automobile on foot a sufficient distance to shout out the license number between themselves. That number was noted on a slip of paper later given to the police.

In *Fields*, the trial court denied a motion *in limine* to bar the use of the utterance regarding the license plate number and the court subsequently admitted the testimony into evidence. The reviewing court held that the evidence was proper and that there was no error in the trial court's rulings. The rationale is stated in the quotation from *Keefe v. State* (1937), 50 Ariz. 293, 72 P.2d 425, adopted in *People v. Damen* (1963), 28 Ill. 2d 464, 471, 193 N.E.2d 25, 29:

> " 'A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circum-

stances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.' "

We find that other jurisdictions have adopted the same view in both civil and criminal cases. See Annots., 78 A.L.R.2d 300 (1961); 50 A.L.R.3d 716 (1973).

The defendant next asserts that evidence was improperly admitted at trial in an attempt to prove flight and that the evidence was prejudicial to the defendant. The evidence regarding flight was as follows: The day after the shooting, on March 13, the police went to defendant's home to serve a warrant on the defendant. Defendant's brother answered the door and stated that he had not seen the defendant for a few days. The officers told defendant's brother about the warrant and the brother agreed to relay the information to defendant when he saw him.

On March 16 the police received information that defendant was in an automobile in town, the police then stopped the automobile and found two persons in the car. Defendant was not in the car and the officers advised the two occupants that there was a warrant outstanding for defendant. The two persons in the car informed the officer that defendant had just left the automobile. The State stipulated that it was not using this latter testimony to show that defendant knew that the police were looking for him in that automobile, or that he left the automobile because of that.

On March 22, 1979, 10 days after the shooting incident, the police went to the residence of the Stacker family. They were invited inside, they saw the defendant who they then arrested. The defendant surrendered peacefully.

In addition to the evidence presented specifically on flight, there is uncontradicted testimony that after shooting King, the defendant left the bar almost immediately.

■■ The law regarding flight is that proof of flight by an accused in a criminal case is admissible as a circumstance tending to show consciousness of guilt. *People v. Autman* (1946), 393 Ill. 262, 65 N.E.2d 772.

The defendant asserts, based on *People v. Harris* (1961), 23 Ill. 2d 270, 178 N.E.2d 291, that evidence of flight is only admissible if defendant knew he was a suspect sought by police, and that in the instant case the defendant

had no such knowledge. In *Harris*, the evidence of flight concerned defendant's escape from a jail where he was being held on a charge unrelated to that for which he was on trial. In *Harris*, the court stated:

> "The inference of guilt that may be drawn from flight depends upon the knowledge of the culprit that the crime has been committed and that he is or may be suspected." (23 Ill. 2d 270, 273, 178 N.E.2d 291, 293.)

In the instant case, defendant admits having shot King. He left the scene of the shooting and was not found for 10 days. Defendant claims the shooting was in self-defense, but his assertion that he did not know the police would want to talk with him is scarcely persuasive.

■■ The evidence of flight in this case was by no means overwhelming, but it was not relied upon by the State for any substantial portion of its case. In closing argument, the prosecutor stated that the evidence of flight "might not mean much, but I think the evidence shows there is a consciousness of guilt by Irvin McNeal." Under these circumstances we find no error in the admission of the evidence of flight.

At the close of the State's case, defendant made a motion *in limine* to prevent the State from impeaching the defendant with his prior burglary conviction. The attorneys for both sides argued the motion after which the court stated simply that the motion was denied. The defendant argues that the trial court did not balance the probative value of the use of the conviction for impeachment against its prejudicial effect before ruling on its admission, as is required by *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

An identical argument was presented in *People v. Owens* (1978), 58 Ill. App. 3d 37, 373 N.E.2d 848, and rejected by this court. In that case we stated:

"No cases have been called to our attention which require that the trial court make an affirmative statement concerning the factors considered in making its decision. In *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276, this issue was raised on appeal and the supreme court indicated that normally it may be assumed that the trial court gave appropriate consideration to relevant factors without requiring a specific evaluation of each in open court." 58 Ill. App. 3d 37, 40, 373 N.E.2d 848, 851.

■■ In the instant case the prior conviction was a 1973 conviction for burglary. The defendant was released from prison in 1976. The conviction is clearly within the time limits set by the court in *Montgomery*. Burglary is a felony and has been held to be a crime of dishonesty, either of which makes the conviction admissible for impeachment purposes. (*Washington*.) The trial court did not abuse its discretion in admitting the conviction.

Defendant was charged with two counts of aggravated battery: one

count was based upon use of a deadly weapon in the commission of a battery, and the second charged defendant with the commission of a battery resulting in great bodily harm. (Ill. Rev. Stat. 1979, ch. 38, pars. 12—4(a), 12—4(b)(1).) The defendant was also charged with two counts of armed violence, the underlying felonies of the armed violence charges being respectively the two counts of aggravated battery. The jury was given one instruction on the elements of aggravated battery which provided that proof of either of the two counts was sufficient to sustain the aggravated battery charge. The jury was then instructed that the State must prove that defendant committed aggravated battery and that the defendant was in possession of a dangerous weapon at the time of the commission in order to sustain the charge of armed violence.

Defendant asserts that with these instructions the jury could have found him guilty of aggravated battery based upon the commission of a battery. The jury could then have convicted the defendant of armed violence because at the time of the commission of the aggravated battery he was in possession of a weapon. Defendant argues that the single element of possession of a weapon could have been used to satisfy two separate elements of the offense of armed violence, effectively punishing defendant twice for the same act, in violation of the double jeopardy clause of the fifth amendment. The argument has been expressly rejected in *People v. Gross* (1977), 52 Ill. App. 3d 765, 367 N.E.2d 1028, and *People v. Jones* (1980), 86 Ill. App. 3d 253, 408 N.E.2d 79.

■■ Defendant did not object to the giving of these instructions at trial and therefore has waived the issue. Further, one proper count will sustain a conviction where there is a general finding of guilt. The finding of guilt will be presumed to be based upon any good charge to which the proof is applicable. *People v. Collins* (1979), 71 Ill. App. 3d 815, 824, 390 N.E.2d 463, 470-71.

For the foregoing reasons, the judgment of conviction of aggravated battery is vacated and the judgment for conviction of armed violence is affirmed.

Affirmed in part; vacated in part.

MILLS, P. J., and WEBBER, J., concur.